In the Matter of BENJAMIN MARCUS, an Attorney, Respondent.

First Department, March 7. 1924.

**Attorney and client — disciplinary proceedings — attorney who represented two partners in criminal prosecution procured withdrawal of complaint against one without knowledge or consent of other — said attorney after accepting retainer from several tenants permitted default judgment to be taken against them — attorney suspended for one year.**

An attorney at law suspended from practice for one year upon the charge that, while representing two partners in a criminal prosecution against them, he procured the dismissal of the complaint against one, who was a particular friend, without the consent and against the protest of the other who was finally convicted of violating section 1141 of the Penal Law for having in his possession and selling obscene books, and upon the further charge that, after accepting retainers from several tenants to represent them in actions for increase of rent, he neglected to appear at the trial and thereby permitted a default judgment to be entered, and after being notified that judgment had been taken, neglected to take any steps to protect or restore his clients' rights.

DISCIPLINARY proceedings instituted by the Association of the Bar of the City of New York.

*Einar Chrystie,* for the petitioner.

*George Gordon Battle,* for the respondent.

CLARKE, P. J.:

The respondent was admitted to practice at the April, 1905, Term of the Appellate Division, First Department. The first charge set forth in the petition is that after a disagreement had arisen between two members of a copartnership composed of Messrs. Press and Lyons and while acting as personal counsel for Press in the negotiations which followed the disagreement the respondent agreed to act as attorney for both Press and Lyons in criminal proceedings brought against them and thereafter instead of acting impartially and for the best interests of both clients in the criminal proceedings he obtained a special advantage for Press, who was his personal friend, at the expense or to the detriment of Lyons, the other client, without his knowledge or approval. The respondent denies that at any time he sought to obtain an advantage for one client over the other, and affirmatively alleges that at all times he acted for the best interests of both. Early in the year 1920 the respondent became acquainted with Robert Press, and shortly thereafter with John Lyons. Respondent acted for Press in the dissolution of a jewelry business with which he had been associated, and they became friends. Lyons had for about eight years been the owner of a book selling business under the name of The

Modern Book Society. In September, 1920, the respondent acted for both men in the formation of a partnership, retaining the name, The Modern Book Society. Disagreements arose between the partners, and about April, 1921, respondent was consulted by both partners in the endeavor to adjust their difficulties. No satisfactory agreement was reached, but an arrangement was made whereby Lyons was to withdraw from active participation in The Modern Book Society, leaving Press in charge; Lyons' drawing account was to be discontinued and pending a complete separation the partners were to share expenses and profits equally. Thereafter Lyons went to the place of business only two or three times a week.

In June, 1921, Lyons and Press were both arrested at the instance of the Society for the Prevention of Vice, charged with having in their possession and selling obscene books. Separate informations were filed against each defendant. Respondent was consulted by both partners and agreed to and did act for them in the criminal proceedings ensuing. Lyons and Press were arraigned before a magistrate who dismissed the charge based on one book but held them under bail for Special Sessions on the charge relating to another book. After several adjournments the case was peremptorily set for October thirteenth in the Court of Special Sessions. Before they were reached the respondent conferred with the deputy assistant district attorney and with officials of the Society for the Prevention of Vice in order to secure the withdrawal of the charges against both defendants, stating in his argument that as the Vice Society had seized all the books in the possession of Mr. Press and Mr. Lyons, and as the plates had been turned over to the Boston Society, there was nothing to be gained by pressing the cases. Mr. Sumner for the Vice Society refused to consent to this course, giving as a ground that it was his desire to secure a ruling by the court on the question whether the book was an obscene one within the meaning of section 1141 of the Penal Law. Respondent then stated to Mr. Sumner, according to his testimony, as follows: " The situation here is this between these two fellows: Mr. Press has been in this business for about six or seven months. Mr. Lyons has been in it for eight years. Mr. Lyons has been constantly pestering me for the past year to get a release from Mr. Press. He wants to get out of the business. In fact he has not been actively or otherwise connected with the business for the past six or seven months and his loss of interest in the business coincides with the date of the shutting off of a drawing account. Now, if Mr. Press is going to continue this business and liquidate the obligations against it, that he cannot do it with a record of any con-

viction against the business if one should follow. Have you any objection to withdrawing this case against Mr. Press? And he said ' No, I have no objection.' "

The case against Press was then called. Respondent made the application of withdrawal to the court and the assistant district attorney stated " that it was practically the same charge against two men who constituted a partnership,— practically one charge,— and everybody was agreeable to it being withdrawn against Press."

Then respondent submitted the case upon the agreed statement of facts and was given until October twenty-fourth to file a brief. The court thereupon granted the application against Press. The case against Lyons was next called, and Lyons immediately protested in open court against being alone held, stating, according to his own testimony, as follows: " I said to the Presiding Magistrate,— I believe it was Mr. Moss,— that I do not understand why the case should be tried against me, as I did not sell the book, nor was I an active partner in this business, and I had no understanding at all that the charges were to be dropped against Press and that I would assume that responsibility."

The respondent stated to the court: " That is all right." Decision was reserved by the court and immediately thereafter Lyons again protested vigorously to respondent about the course that had been pursued, whereupon respondent agreed with Lyons to ask the court to reinstate the charge against Press. He embodied such request in the brief which he afterwards submitted as follows: " The Court's attention is also respectfully directed to the fact that owing to the objection of the defendant Lyons that the charge which was withdrawn at the request of defendant's counsel against the defendant Press shall be reinstated, in order that any disposition which may be made of the matter may apply equally to both."

The respondent also made an application in open court to have the charge against Press reinstated, which request was denied with the statement by the court that " Once a complaint is withdrawn it is withdrawn for all time." Lyons was then found guilty, sentenced to a fine of $250 or sixty days in prison, finger-printed and confined in jail four or five hours, until his fine was paid.

Respondent conceded that Lyons had not been consulted in any way in regard to the proposal to withdraw the charge against Press and hold Lyons and that the first Lyons knew of it was when he heard respondent make the application of withdrawal to the court.

The learned referee states that upon all the evidence two questions arise for consideration: " *First*, was respondent's act in stipulating that the complaint against Press be withdrawn, without notice to Lyons, in conformity with the ethics of his profession?

*Second,* as matter of fact, was respondent, in arranging for and making the withdrawal application, acting in good faith and in pursuance of duty to Lyons? "

Taking up the first question, the referee is of the opinion that the act of respondent in stipulating that the complaint against Press be withdrawn, without having given notice to and obtaining the explicit consent of Lyons, was not in accordance with good ethics, in that respondent's failure to notify Lyons of his intention to make the withdrawal application in favor of Press thereby deprived Lyons of an opportunity to retain other counsel to protect his interests under the altered conditions then presented.

Regarding the second question, obviously the gravity of the respondent's offense depends upon whether he acted in good faith towards Lyons in failing to advise him of his intention to make the withdrawal application.

The learned referee further says: The evidence shows that during the summer's negotiations with Lyons and his counsel over the business differences existing between the partners, no intimation was given by respondent to either Lyons or his counsel of respondent's intention to request the withdrawal of the charge against Press. Further, that for some time respondent and Lyons sat in the court room awaiting the call of these cases, and yet respondent did not apprise Lyons of the nature of the application that was forthcoming. Also when upon the making and granting of such application, Lyons jumped to his feet and protested in open court, respondent then had positive notice that one client disavowed what he had done in the interests of the other. And the warning was given undoubtedly still in time for him to have retraced his steps. Instead of waving Lyons down and assuring the court that " that is all right," he could easily have obtained a moment's indulgence for conference with Lyons and finding that Lyons continued seriously to object, then request the permission to withdraw the application on the ground of his oversight in failing to advise Lyons of his course, thus leaving both defendants before the bar of justice. But that respondent did not do.

Lyons and Press were equally clients of respondent, in similar peril upon identical grounds, equally innocent or equally guilty. Each had a right to expect that respondent would serve his cause without discrimination. Respondent knowing also that their relations had for a long time been strained, that the men were perhaps even hostile to each other, should have been especially careful to treat both alike — in no event to stipulate for an advantage to one without the explicit consent of the other.

The sixth Canon of Ethics points out that a lawyer must represent

First Department, March, 1924.      [Vol. 208

his client with " undivided fidelity," and the referee states: " The evidence conclusively indicates that in arranging to exonerate Press and to hold Lyons respondent was influenced by his admitted friendship for Press. As a result of the procedure adopted Lyons must go through life bearing the stigma of conviction and imprisonment for selling obscene books, while Press, his equally guilty partner, suffers no penalty whatever. Even the note he gave Lyons for approximately half the fine, the evidence shows, was never paid." And upon the first charge the referee finds the respondent guilty of misconduct.

The second charge is in substance that in October, 1920, respondent received a fee from eight tenants to represent their interests in proceedings brought against them by their landlord; that respondent failed to appear in court when the cases were called, as a result of which neglect judgment by default was rendered against his clients; that after being so notified he further neglected to take any steps to protect or restore his clients' rights, compelling them to retain other counsel.

The undisputed evidence shows that the respondent was retained by eight tenants of 1494 University avenue, Bronx, to represent them in actions for increase of rent brought by their landlords. At the time of the retainer it was agreed that respondent was to receive fifteen dollars from each tenant, one-half to be paid then, the other half to be paid at the termination of the litigation, and also his disbursements. Respondent thereupon interposed answers and demands for bills of particulars and jury trial in each case and deposited the rent and jury fees with the clerk of the court. The cases were still pending when, on July 12, 1921, respondent visited the tenants and requested them to disregard the arrangement because he needed the money, and to pay him the balance of his fee at that time, which the tenants refused to do. In October, 1921, when the cases appeared on the calendar for trial, respondent failed to appear and default judgments were taken by the landlords. On October twenty-first respondent received a letter from the attorney of the landlords notifying him of the taking of the judgments by default, and stating that he had tried unsuccessfully to reach respondent on the telephone. In response to said letter respondent wrote the landlords' attorney under date of October 22, 1921. Respondent did not visit the court house to look up what had happened to the cases, nor did he do anything further about them. Thereafter the tenants tried ineffectually to get in touch with respondent, failing which they employed another attorney to represent them.

The learned official referee as his conclusion upon the second

charge states: " When respondent received the letter from Mr. Tobias notifying him that the inquests had been taken and judgments filed against his clients, whether he believed Mr. Tobias' statements or not he should have taken immediate steps to investigate the situation. He admits that he did not go or send to the Court for this purpose nor even telephone to his clients regarding the matter. Further, respondent's action while the cases were pending undetermined and requesting the balance of his fee before he had fully complied with the terms of the agreement with his clients cannot be commended. The only inference that can be drawn from the ensuing circumstances is that because he did not get the balance of his fee, not yet due, he did nothing further to protect his clients' interest; and his later disregard of the information contained in Mr. Tobias' letter would seem to strengthen this inference perceptibly."

And upon the second charge he found respondent guilty of misconduct as charged.

It seems to us that the respondent has been derelict in the performance of his professional duties to his clients, and, while the offenses are not major, yet his clients have suffered serious annoyance from his neglect of their interests.

Our conclusion is that he should be suspended from practice for one year that he may realize his obligations as an attorney and counselor at law, with leave to apply for reinstatement at the expiration of that term upon proof of his compliance with the conditions to be incorporated in the order to be entered hereon.

DOWLING, FINCH, MCAVOY and MARTIN, JJ., concur.

Respondent suspended for one year. Settle order on notice.