In the Matter of WILLIAM L. CLAY, an Attorney and Counselor at Law, Respondent.

Fourth Department, March 15, 1939.

*Herbert W. Clyde*, for the petitioners.

*William L. Clay*, respondent, in person.

DOWLING, J.   This is a disciplinary proceeding brought by the petitioners as representatives of the International Hod Carriers, Building and Common Laborers Union of America, Local Union No. 435, against William L. Clay, a member of the bar of this State, practicing his profession at Rochester.   The matter was referred to an official referee whose report is before us.

A review of the facts is necessary to an understanding of the issue. Local Union No. 435 was a member of the International Hod Carriers, Building and Common Laborers Union of America, a Massachusetts corporation, with headquarters at Quincy.   On November 24, 1932, Local No. 435 elected a full set of officers and appointed a business agent for a term of five years.   The validity of this election was discussed from time to time among the members of the local union.   On June 14, 1935, at a meeting called for the purpose, a resolution was adopted declaring the said election to be null and void.   On June 28, 1935, at a regularly called meeting, Local No. 435 elected an entire new set of officers and appointed a new business agent.   The deposed officials brought the matter to the attention of the International organization.   The International undertook to champion their cause and so notified the local union.   On July 5, 1935, at a meeting of the local union, a resolution was adopted authorizing the executive board of the union to retain counsel to advise the local union as to the course to be pursued.   The executive board retained the respondent on July 9, 1935.   The executive board familiarized Mr. Clay with the situation and informed him that the newly-elected officers had demanded of John Bruce, former business agent, and Vincent Mistretta, former financial secretary of the local, that they deliver to them the books, records and property of the local then in their possession and that their demand had been refused.   The board also informed Mr. Clay that the International was determined to set aside the election of June 28, 1935, and that it had threatened to interfere with the loyal members of the local union in their respective employments.   The board directed Mr. Clay to procure an injunction restraining the International from interfering with the men on the jobs and to take proceedings to recover the books, records and property of the local and to secure to the local a bank account of about $1,000 which it had on deposit with the Rochester Trust and Safe Deposit

Company. The board furnished to Mr. Clay the necessary data for the purpose, which included the records of the proceedings of the local union relative to the election of June 28, 1935. Mr. Clay informed the board that his fee for the injunction action would be $150 and that it would take a week to prepare the necessary papers therein. The $150 was promptly paid to Mr. Clay.

Between July 5 and 13, 1935, the International ordered the local union to rescind all previous actions and to reinstate the old officers, including the former business agent. The local union called a meeting for July 19, 1935, to take action upon these demands. Mr. Clay was instructed to await the result of that meeting. At the meeting on July 19, 1935, a resolution to rescind the action taken on the 14th and 28th of June, 1935, was defeated by a substantial majority. Mr. Clay was then instructed to proceed as directed.

On July 24, 1935, the International notified the local union it had taken over the affairs and property of the local union and had directed a Mr. Schiro to proceed accordingly. The International also served notice on all the members of the local union who were loyal to the faction represented by the new officers, to pay their dues to the International or be suspended. On July 25, 1935, Mr. Clay and the executive board discussed the situation fully and Mr. Clay advised the board that the election of June 28, 1935, was legal, and that the local union had a good case for an injunction. Mr. Clay also advised the local union that it had no further appeal under the rules of the International organization. He informed the board that he would proceed immediately to obtain an injunction.

On August 2, 1935, Mr. Clyde, the newly-appointed business agent of the local union, informed Mr. Clay that the International was interfering with the members of the local union on the Rundel Library job, stating that the men had informed him that they were being coerced and threatened. Mr. Clay informed Mr. Clyde that the injunction papers were being prepared as rapidly as circumstances would permit.

On August 14, 1935, Mr. Clay informed the executive board that he had not prepared the papers for an injunction but was preparing papers to replevin the property of the local. He advised the board that a replevin action would fully protect their interests. On the 16th of July, 1935, Mr. Clay instituted, in the name of the local union, an action in replevin against John Bruce, Vincent Mistretta and Benjamin Schiro. On motion of the defendants this action was dismissed on the ground that the plaintiff, being an unincorporated association, had no capacity to sue. In September, 1935, Mr. Clay instituted, in the names of the president and treasurer of the local union, a second replevin action against the same

parties. Motion to dismiss this action was denied and it was placed upon the trial calendar for October, 1935.

On October 10, 1935, Mr. Clay instituted an action against the Rochester Trust and Safe Deposit Company to recover on a check for $910 which had been certified by the trust company and on which it had refused payment pursuant to notice forbidding withdrawals on the local's account which it had received from the International. The trust company appeared and moved to pay the deposit into court and to interplead John J. Moreschi as president and Benjamin Schiro as general organizer of the International, Clemente Stellone as alleged president and Canio Parrini as alleged treasurer and Vincent Mistretta as alleged secretary of Local No. 435. The motion was granted and an order was entered December 28, 1935, permitting the payment of the deposit into court and interpleading said persons as defendants. This order directed the plaintiffs to serve a summons and complaint on the interpleaded parties within twenty days after entry and service of a copy of said order. Instead of complying with the order Mr. Clay appealed. The order was affirmed in May, 1936. Mr. Clay never served a summons and complaint on any of the interpleaded parties although they were available for service within the State of New York. Mr. Clay, however, on various occasions assured his clients that service had been made as directed by said order.

On August 28, 1935, Mr. Stout, president of the local union, through the efforts of the International, lost his job at the Rundel Library and the other members of the union employed on that job were given the choice of recognizing Bruce and Schiro or losing their jobs. They yielded in order to maintain their employment. This situation was called to the attention of Mr. Clay, but he did nothing.

In July, 1936, the petitioners supplied Mr. Clay with affidavits and information to the effect that the International was interfering with the members of the local in their employment and requested him to procure an injunction to prevent such interference. He agreed to obtain an injunction upon payment of an additional fee of fifty dollars. Petitioners paid twenty-eight dollars on account and set about raising the balance. Mr. Clay turned the preparation of the necessary papers for an injunction over to a law student in his office and departed on a two weeks' vacation. This young man attempted to prepare the requisite papers, but was unable to do so on account of his inexperience. No injunction action was instituted.

On January 2, 1937, the interpleaded parties in the bank action moved to dismiss it for failure of the plaintiffs to make service as required by the order of interpleader and for payment of the deposit in court to them. Mr. Clay opposed the motion and asked for an

extension of time to comply with the order. While this motion was pending decision, and on February 12, 1937, Mr. Clay informed the executive board that the defendants in the bank action had offered $250 in settlement thereof and advised acceptance, stating " that labor unrest, and particularly the sit-down strikes that were on at the time had prejudiced the public interest against labor; that the courts were affected by this, and he did not believe that we could get a favorable decision, no matter how strong the evidence might be in our favor." He said the case was in court and would have to be tried if the offer was refused. He said everything was all right. He did not inform the board of the motion to dismiss. On February 20, 1937, the court granted the motion to dismiss for failure to prosecute and directed that the moneys on deposit be paid over to the interpleaded parties. The executive board learned of this decision through an item in a Rochester paper. They immediately called upon Mr. Clay and demanded an explanation. Mr. Clay stated that the action had been dismissed for lack of merit. He said that the local union had lost none of its rights by dismissal, that the justice who granted the motion was a good friend of his and that he would open the default for him. He said he would appeal from the decision dismissing the case, but the local union would have to furnish a bond of $250. He said he would try the replevin case providing he was paid about $150 before the opening of the trial. He did not appeal from this order, nor did he move to open the default or move the replevin action for trial.

On March 4, 1937, without the knowledge or consent of his clients, Mr. Clay entered into a stipulation with the attorney for the defendants in the bank and replevin cases wherein he agreed to discontinue these actions on payment of $150, subject, however, to the approval of his clients. On learning of the discontinuance of these actions through an item in a Rochester paper the executive board interviewed Mr. Clay, refused to accept the $150, and demanded that the orders of discontinuance be vacated. These orders were vacated on March 10, 1937. The deposit in court, amounting to $1,007.41, was paid to the interpleaded parties pursuant to the order of February 20, 1937.

On April 10, 1937, the executive board demanded the local's papers from the respondent. Part of the papers were returned directly, part in the summer of 1937, and the remainder in January, 1939.

On October 2, 1937, the petitioners filed a complaint against Mr. Clay with the Rochester Bar Association, which they later withdrew for reasons sufficient to them.

The evidence clearly establishes the gross negligence and professional misconduct of the respondent as defined in subdivision 2

of section 88 of the Judiciary Law. He was retained and paid to institute an injunction action for the protection of his clients. He never instituted such an action, and as a result his clients were deprived of an opportunity of appealing to the court for injunctive relief. He was not frank and honest with his clients and he deceived them as to the facts when they inquired of him the status of their litigation. He retained fees paid him for services which he never performed. He demanded and in part received fees to which he was not entitled. He negligently failed to prosecute the bank and replevin cases to the embarrassment and financial loss of his clients. Without reasonable cause therefor he cast reflections upon the courts of such character as to be prejudicial to the administration of justice. He displayed a callous indifference to the entreaties of his clients for action in their behalf and to the duty he owed them as a lawyer.

Respondent's explanation of his conduct is weak and unsatisfactory. The only extenuating circumstance is that his conduct has not been shown to have been corrupt.

Disciplinary proceedings will not lie against an attorney for negligence in the conduct of his client's business where the element of deceit, fraud, or such conduct as affects his character, is lacking. (*Matter of Janover*, 179 App. Div. 882.) Here, however, there is more than mere negligence. There is deceit and conduct that reflects upon the character of the respondent.

An attorney is commissioned by the court to hold himself out to the world as competent and trustworthy. The public has a right to assume he has the necessary legal knowledge to represent his clients and the integrity which will protect them from all fraud and wrongdoing on his part. He must keep his clients informed as to the state of their business and be open and frank with them. He must not suppress the truth from them. (*People ex rel. Burby* v. *Common Council*, 85 Hun, 601.) He must have and maintain a fair private and professional character. (*Matter of Rouss*, 221 N. Y. 81.)

It has been held that an attorney is guilty of professional misconduct if he unreasonably and unwarrantably delays the prosecution of an action (Referee's opinion in *Matter of Barkley*, 42 App. Div. 597; appeal dismissed, 161 N. Y. 647; *Matter of Friedman*, 255 App. Div. 642), if he fails to protect his client's rights (*Matter of Marcus*, 208 App. Div. 300; *Matter of O' Neill*, 175 id. 973), if he permits an action to go by default (*Matter of Radetsky*, 245 App. Div. 662; *Matter of Gerety*, 240 id. 496), if he makes false and misleading statements to his clients (*Matter of Boehm*, 150 App. Div. 443; *Matter of Spigelgass*, 225 id. 297), if he fails to truthfully

inform his client as to the status of his case (*Matter of Babcock*, 230 App. Div. 323), if he accepts a retaining fee for the commencement of an action and flagrantly neglects to proceed therewith (*Matter of Steierman*, 237 App. Div. 584), if he has shown neglect or indifference in the handling of the affairs of his client (*Matter of Moller*, 248 App. Div. 877; *Matter of Porcella*, 241 id. 344), if he agrees to prosecute an action for a certain fee and then demands additional compensation (*Matter of Karp*, 240 App. Div. 388), if he unjustifiably impugns the integrity of the courts (*Matter of Manheim*, 113 App. Div. 136; *Matter of Rockmore*, 127 id. 499; *Matter of Markewich*, 192 id. 243).

Subdivision 2 of section 88 of the Judiciary Law provides in part " the Appellate Division of the Supreme Court in each department is authorized to censure, suspend from practice or remove from office any attorney and counsellor-at-law admitted to practice as such who is guilty of professional misconduct, malpractice, fraud, deceit, crime or misdemeanor, or any conduct prejudicial to the administration of justice." In considering the conduct of a member of the bar under this section the court's power is not limited to cases in which a technically criminal act has been committed. (*Matter of Chadsey*, 141 App. Div. 458; affd., 201 N. Y. 572; reargument denied, Id. 600.)

The evidence does not indicate a finding that the respondent was guilty of any crime or misdemeanor, but it does indicate that he was guilty of deceit, professional misconduct and of conduct prejudicial to the administration of justice, which make disciplinary measures mandatory. In the judgment of this court respondent should be suspended from the practice of the law for six months and until the further order of the court.

Findings of professional misconduct should be made and an order should be entered suspending the respondent from practice for six months and until the further order of this court.

All concur, except CROSBY, J., who dissents in respect to the disciplinary measure imposed and votes for censure. Present — SEARS, P. J., CROSBY, LEWIS, CUNNINGHAM and DOWLING, JJ.

Findings of professional misconduct made and order entered suspending respondent from practice for a period of six months and thereafter until the further order of this court.