In the Matter of WILLIAM L. CLAY, an Attorney, Appellant. INTERNATIONAL HOD CARRIERS' BUILDING AND COMMON LABORERS' UNION OF AMERICA, LOCAL NO. 435, Respondent.

Argued January 24, 1940; decided March 5, 1940.

*Victor Levine* for appellant. Appellant was not guilty of gross negligence which warranted disciplinary action against him. (*Matter of Janover*, 179 App. Div. 882.) Appellant did not deceive his clients when they inquired as to the status of their litigation. (*Matter of Palmieri*, 221 N. Y. 611.)

*Daniel J. O'Mara, District Attorney* (*Stephen K. Pollard* of counsel), for respondent. Appellant was guilty of gross negligence which warranted disciplinary action against him. (*Matter of Marcus*, 208 App. Div. 300; *Matter of Gluck*, 139 App. Div. 894.) Appellant deceived his clients when they

inquired as to the status of their litigation. (*Matter of Babcock*, 230 App. Div. 323; *Matter of Cantor*, 248 App. Div. 390.) The record discloses evidence that appellant accepted money from his clients for services which he did not perform. (*Matter of Steierman*, 237 App. Div. 584.) Appellant cast unworthy reflections upon the courts which were prejudicial to the administration of justice. (*Matter of Markewich*, 192 App. Div. 243; *Matter of Manheim*, 113 App. Div. 136.)

LOUGHRAN, J. The appellant, William L. Clay, is a member of the bar of this State practicing his profession in the city of Rochester. In July, 1935, he was retained by one faction of a local labor union to act for them in a controversy with another faction for dominion of the affairs of the organization. This retainer continued until April, 1937.

A year later, these clients laid before the Appellate Division charges that Mr. Clay had been unfaithful in the matters they had committed to his professional care. The charges were heard by a referee. Upon his report, the court made findings as follows: " Mr. Clay was guilty of gross negligence in the conduct of the business intrusted to him by his clients, the local Union. He was not frank and truthful and deceived his clients when they inquired the status of their litigation. He accepted money from his clients for services which he never performed, which money, in good conscience, he should have returned to his clients, and in part received and demanded fees to which he was not entitled. Without reasonable cause or justification he cast unworthy reflections upon the courts which were of a character to be prejudicial to the administration of justice. He displayed a callous indifference to the entreaties of his clients and to his duty to them as a lawyer. He was thus guilty of professional misconduct within the meaning of Section 88 of the Judiciary Law, Subdivision 2."

Thereupon an order was entered suspending Mr. Clay from the practice of his profession for six months and there-

after until the further order of the court. By leave of the Appellate Division, Mr. Clay presents its order to us for review of questions of law asserted by him to be involved therein. (See Judiciary Law [Cons. Laws, ch. 30], § 88, subd. 6.)

It is to be premised that no claim was made that any activity or remissness of Mr. Clay was corrupt.

In the warfare for control of the local union, the faction opposed to Mr. Clay's clients was a minority but had the support of an international union with which the local was affiliated. The date of Mr. Clay's retainer was July 9, 1935. The record shows, as the Appellate Division has said, that his clients then directed him "to procure an injunction restraining the international from interfering with the men on the jobs and to take proceedings to recover the books, records and property of the local and to secure to the local a bank account of about $1,000 which it had on deposit with the Rochester Trust and Safe Deposit Company." (256 App. Div. 528, 529.)

Mr. Clay commenced an action to restore to the local union its books, records and property. No trial of that action has been had. He commenced, too, an action to compel payment to the local union of the amount of its bank deposit. An order has been entered dismissing that action for delay in prosecution. In his handling of both actions Mr. Clay on occasion failed to exhibit the ardor and diligence that are exacted by the trust upon which a lawyer receives the concerns of a client. Even so, we do not understand the court below to have found that those shortcomings had in them any element of willfulness such as would necessarily call for disciplinary action.

The court below has found, however, that on July 30, 1935, there was "paid to Mr. Clay $150 for his services in the proposed injunction action and for no other purpose." Upon that finding, we take it, the court rested its ultimate conclusions of gross negligence and of unjust enrichment, — Mr. Clay having failed to institute any action for such an injunction.

At the hearing Mr. Clay's clients characterized the $150 they paid to him on July 30, 1935, as his fee for bringing the injunction action. But they did not say that the payment was on either side stated to have been intended for that single purpose. Indeed, their chief witness testified: "At the time this money was paid to Mr. Clay I talked to him about the funds on deposit in the Rochester Trust and Safe Deposit Company's Bank." Thereafter and on August 16, 1935, Mr. Clay informed his clients that he had brought the replevin suit instead of an injunction suit. They made no protest then that this was a departure from his engagement with them. On the contrary, as their chief witness testified: " Well, the members decided that they would either have to go along or abandon the whole position and we had been informed by him that the replevin suit would serve equally as well as an injunction suit. On the strength of that condition they decided that they would go along on the replevin suit."

In that state of the record we are persuaded to hold that there is no evidence to support the underlying finding that the fee received by Mr. Clay from his clients on July 30, 1935, was limited exclusively to services to be rendered by him in the proposed injunction action.

The court below also found that in July, 1936, Mr. Clay's clients again requested him to obtain an injunction against interference by the international union with the employment of members of the local; that Mr. Clay was paid twenty-eight dollars of a fee of fifty dollars then demanded by him; that he left the business to his clerk; and that the clerk had not finished the task two weeks later when " the job for which the injunction was wanted had been lost to the men of the local union." This finding in itself implies nothing more unfavorable to Mr. Clay than lack of assiduity on his part. The further finding that he was not entitled in July, 1936, to a fee of fifty dollars assumes that the original fee of $150 was paid solely for his services in the proposed injunction action. This assumption (as we have already seen) is without foundation.

The charge of conduct aspersive of the administration of justice is based upon the testimony of Mr. Clay's clients that he gave them counsel which in their words was " that labor unrest, and particularly the sit-down strikes that were on at the time had prejudiced the public interest against labor; that the courts were affected by this, and he did not believe that we could get a favorable decision, no matter how strong the evidence might be in our favor." Such animadversions upon the nature of the judicial process are not sensational. It has been observed before that judges have at times been moved by the prejudices they share with their fellow men. Calculations made on that score do not become sinister merely because they have been whispered by a lawyer to his client. In our judgment the finding of conduct prejudicial to the administration of justice was unwarranted.

Mr. Clay's clients made their case against him without the aid of counsel. The referee remarked that their animosity was on the same side with their testimony. None the less, there is evidence that Mr. Clay was not accurate in his reports to his clients and that he misled them when they inquired as to the status of their litigation. We cannot say that this conduct necessarily was merely thoughtless. Whether it was motivated by a wrongful purpose was on this record a delicate inquiry but one that was to be made by the Appellate Division.

The order should be reversed and the matter remitted to the Appellate Division for disposition in accordance with this opinion.

LEHMAN, Ch. J., FINCH, RIPPEY and CONWAY, JJ., concur; SEARS and LEWIS, JJ., taking no part.

Ordered accordingly.