In the Matter of RICHARD E. BABCOCK, an Attorney and Counselor at Law.

BAR ASSOCIATION OF ERIE COUNTY, Petitioner; RICHARD E. BABCOCK, Respondent.

Fourth Department, July 1, 1930.

*Merritt N. Baker*, for the petitioner.

*August Becker*, for the respondent.

PER CURIAM. In this disciplinary proceeding, instituted by the Erie County Bar Association, respondent has been found guilty of unprofessional conduct. We have carefully examined the evidence, and have reached the conclusion that the findings of the referee in that regard are justified, and should be confirmed.

On or about March 4, 1927, Anna J. Pezold consulted respondent concerning certain marital differences which she was having with her husband. A separation agreement was finally entered into by the parties. In April, 1928, Mr. Pezold was adjudicated a bankrupt, and Mr. Howard T. Saperston was appointed his trustee. Among the property which the trustee took over was the interest of the bankrupt in certain real estate held by Mr. Pezold and his wife as tenants by the entirety. Negotiations were had between respondent, acting on behalf of Mrs. Pezold, and Mr. Saperston, for the purchase of that interest. A price of $100 was finally agreed upon, and on June 12, 1928, Mrs. Pezold gave that sum in cash to respondent with which to close the deal. He took the money and kept it until April 9, 1929, when he paid it over to the trustee in bankruptcy, and got the deed. In the meantime Mrs. Pezold had brought this matter to the attention of the grievance committee of the Erie County Bar Association, and a hearing upon her complaint had been had before that committee.

Respondent denies that he had used the money, or had commingled it with his own. He says that he kept the identical currency which had been given him by his client in his safe or in his pocket all this time, and that he was able and ready to turn it over to the trustee in bankruptcy any minute the deed was ready for delivery. This story does not ring true. He lied to his client in February, 1929, when she inquired about the deed, and when he told her that he had put it on record. She became suspicious, and went to the clerk's office where she discovered that it had never been recorded. She then interviewed the referee in bankruptcy, and the complaint to the grievance committee of the bar association followed soon after. If the delay in getting this deed was due to inadvertence and excusable neglect on the part of respondent or Mr. Saperston, or both, and respondent had the money available to close the deal, one would have thought that, after respondent learned of these charges so fraught with danger to himself, he would have refused to sleep until he had turned the money over to the trustee, and obtained possession of the deed which had been promised him. His laches is convincing evidence that he had used the money, and was finding difficulty in replacing it.

It is true that Mrs. Pezold finally received her deed, and that she suffered no loss or serious inconvenience because of respondent's procrastination. However, if it had not been for these charges, the delay would have been much greater than it was, and there is some question whether she would have ever received her deed.

The evidence warrants the finding of the referee that respondent converted this $100 to his own use, and, when his client made

inquiries concerning the matter, he deliberately misrepresented the facts in order to cover up his own default.

We now come to Mr. Babcock's second transaction with Mrs. Pezold, which the referee has found to be irregular. This charge arises out of the retention by respondent of two checks of Howard T. Saperston, as trustee in bankruptcy of Alfred L. Pezold, both of which checks were made payable to the order of respondent, or of Anna J. Pezold, one for $486.91 and the other for $25.09. Respondent admits that he cashed both checks, and used the money. At the time Mr. Pezold was declared a bankrupt he owed his wife $512 for wages. Respondent filed a claim for her against the bankrupt estate as a preferred creditor, and the claim was allowed. These checks were given in payment of this claim.

The Canons of Professional Ethics of the American Bar Association provide that: " Money of the client or other trust property coming into the possession of the lawyer should be reported promptly, and except with the client's knowledge and consent should not be commingled with his private property or be used by him." Common honesty demands a strict compliance with this requirement.

An attorney holds as trustee any money which he collects for his client, and is under a strict obligation to keep it separate from his own, and to pay it over without delay. If he fails so to do, and uses it for any purpose of his own, he violates his duty, and should be disciplined. (*Matter of Menzel*, 216 App. Div. 176, 179; *Matter of Dobbs*, 173 id. 605; *Matter of Maged*, 163 id. 880; *Matter of Cohn*, 141 id. 511.) This rule has been stated and emphasized so many times that repetition ought to be unnecessary, and excuses for its violation should be ignored.

Whether there was a technical conversion of this money by respondent is immaterial. He misappropriated and used for purposes of his own both the $100 which was paid to him for a specific purpose, and the proceeds of the two checks, which he received in payment of his client's claim against her husband's bankrupt estate. He made no effort to repair the wrong, until his misappropriation was discovered and disbarment proceedings were instituted. Such serious dereliction of duty cannot be overlooked or excused.

Payment of money by an attorney to the one entitled thereto, following disciplinary proceedings, does not condone the offense of misappropriation in the first instance. (*Matter of Menzel*, 216 App. Div. 176, 179; *Matter of Levor*, 169 id. 642.)

Mr. Babcock seeks to justify the retention of the $512, which he received from the trustee in bankruptcy in payment of Mrs.

Pezold's claim against the estate of her husband, upon the theory that his client was owing him for legal services. That the respondent had performed valuable services for Mrs. Pezold cannot be denied. He was entitled to fair and reasonable compensation. It is apparent, however, that respondent's services were worth considerably less than the amount which he collected for his client. After the hearing before the grievance committee of the bar association, respondent offered Mrs. Pezold $200 in cash, and a receipt for his bill for legal services. He had prepared an itemized bill, which she took to another attorney, and upon the latter's advice rejected the offer. On the following day respondent paid Mrs. Pezold $400 in cash, retaining, as payment for his services, $112, the balance of the $512 which he had collected for her. He had already been paid $60 on account. At this time Mrs. Pezold attempted to withdraw the charges which she had filed against respondent; in fact the settlement was made on the condition that she should so do. This was the very day the order to show cause was returable before this court. Respondent delayed all restitution until the eleventh hour.

Respondent had a retaining lien on the money which he had collected for his client from the trustee in bankruptcy for all services which he had performed for her, not only those which related to the claim which this money went to pay, but also for any balance due him for other professional services performed for her. (*Ward* v. *Craig*, 87 N. Y. 550; *Matter of Heinsheimer*, 159 App. Div. 33; *Mathot* v. *Triebel*, 98 id. 328.) The extent of that lien, however, was measured by the value of such services, If the amount could not be agreed upon by the parties, it must be fixed by the court. (*Matter of Knapp*, 85 N. Y. 284, 297.)

While respondent was justified in retaining the $512 which he had collected from the trustee in bankruptcy and in refusing to turn it over to his client until the amount of his lien had been determined, he had no right to appropriate it and use it for his own.

Respondent's misconduct, so far as it relates to his dealings with Ruth Bedell Kleckner, does not pertain to money matters, and, while it is not to be commended, is not as serious as the charges which have already been discussed.

In May, 1929, Mrs. Kleckner retained Mr. Babcock to commence a divorce action for her against her husband. He agreed to do the work for seventy-five dollars, and was paid thirty-five dollars on account. After the action was commenced, respondent permitted it to drag until February 11, 1930, when a hearing was had and an interlocutory decree was granted. This was after these charges had been filed with the grievance committee. During all this time

Mrs. Kleckner was urging speed in the conduct of her case, and respondent was putting her off, and leading her to believe that he was looking after her interests, and that the delay was due to the court rather than to any lack of energy on his part. In July, 1929, long before he had seen any witnesses and before he was ready for trial, respondent notified Mrs. Kleckner that her case would be reached the following Monday, and told her to come to his office at that time. She did as requested, only to be informed that the case could not be reached on that day. This was a deliberate falsehood. Shortly afterwards he asked her for more money. The matter was then allowed to rest until September, when respondent notified his client that the case would be reached the following Monday. She met him at the court house that day as directed, only to be told that the case could not be reached until later. This story was untrue. Subsequently respondent asked for more money, and received fifteen dollars. Mrs. Kleckner on this occasion gave him a twenty-dollar bill, and he gave her back his check for five dollars, which went to protest and which has never been paid.

If the amount which had been agreed upon by the parties as respondent's compensation was too small, he need not have made the bargain in the first instance, but having agreed to do this work for seventy-five dollars, and having taken his client's money, he was under obligation to prosecute the action with reasonable diligence. (*Matter of Boehm*, 150 App. Div. 443.)

The serious part of this charge is the deceit which respondent practiced upon his client. The relation between an attorney and his client is of a most confidential nature. Misrepresentation or deceit on the part of an attorney toward his client, whether it be for the purpose of obtaining money or for any other cause, cannot be tolerated. Respondent owed Mrs. Kleckner the duty of being fair and honest with her, and of keeping her truthfully informed of the progress of her case whenever she asked for such information, and when he deceived her as to the date of trial, and the cause of the delay, he violated his duty as an attorney, and showed himself unworthy of his high profession.

We have no hesitancy, therefore, in approving of the finding of the referee that the respondent had been guilty of professional misconduct in misappropriating moneys of Mrs. Pezold on two occasions, and of deceiving Mrs. Kleckner in regard to the progress of the action which he had been retained to commence for her.

This brings us to the question of what punishment should be inflicted upon respondent for his misconduct. This is always a troublesome matter. The referee has recommended disbarment. While we have the highest regard for the judgment and opinion

of the learned official referee before whom this proceeding was tried, and while we regret to differ from the conclusion which he has reached after mature deliberation, we are inclined to think that disbarment, under all the circumstances, would be a somewhat too harsh punishment to be inflicted upon respondent, and that the ends of justice would be fully met by a suspension from practice for two years.

While no two cases of professional misconduct are exactly alike, and what was done in one case is never a controlling precedent for the court to follow in another proceeding, we find ample authority for refusing to inflict the full penalty of disbarment in the case at bar. (*Matter of Gordon*, 229 App. Div. 142; *Matter of Menzel*, 216 id. 176; *Matter of Dobbs*, 173 id. 605; *Matter of Levor*, 169 id. 642; *Matter of Rich*, 158 id. 473; *Matter of Herbst*, Id. 601; *Matter of Boehm*, 150 id. 443.)

Any leniency which we have shown respondent should not be taken as any indication that we condone his offense, or that we will, in the future, look lightly upon similar misconduct which is brought to our attention. The high standards of the profession must not be lowered.

All concur. Present — SEARS, P. J., CROUCH, TAYLOR, EDGCOMB and THOMPSON, JJ.

The report of the referee is confirmed, and respondent is suspended from practice for two years from the date of the entry of order hereon, and thereafter until further order of this court.