In the Matter of NICHOLAS G. POWERS, an Attorney and Counselor at Law, Respondent.

Fourth Department, May 4, 1932.

*Clarence Unckless*, for the petitioner.
*Michael J. Larkin*, for the respondent.

PER CURIAM. Nicholas G. Powers, the respondent in this disciplinary proceeding, has been found guilty of professional misconduct by the referee to whom the matter was referred, and we are asked to confirm the report, and determine the punishment which should be inflicted.

The charge against Mr. Powers centers about a payment of $1,000, which was made to him in March, 1927, by Mr. T. Stewart Foster.

Stuart E. Burke had been indicted by the grand jury of Herkimer county for the crime of bigamy, and Mr. Powers had been retained to defend him, and was attempting to secure his release on bail. Bail had been fixed at $2,000, but if cash was deposited in lieu of a bond, half that sum would have been accepted. Foster, who was interested in securing Burke's release, borrowed $1,000 on his note at the bank, and gave it to Powers. Powers kept the money, and had his wife execute the required bond. In 1930 the indictment was dismissed, and the bail was exonerated.

The complainant claims that this money was given to Powers for the express purpose of paying it into court as cash bail for Burke. Powers, on the other hand, insists that the agreement was that his wife would go on the bond temporarily, and that the $1,000 was deposited as security for her liability.

The referee has given Mr. Powers the benefit of the doubt, and has accepted his version of the transaction. We think that such finding is against the weight of the evidence, and should be reversed, and that a new finding should be made that this money was paid to the respondent for the express purpose of depositing it as cash bail to secure Burke's release.

The conclusion which we have reached is evidenced by the receipt which Mr. Powers gave for the money, which reads, " Received of T. Stewart Foster $1,000.00 (One Thousand Dollars) *for bail* in People v. Burke." (Italics ours.) Then, too, what possible object could there have been in Mrs. Powers obligating herself in the sum of $2,000 to insure Burke's appearance upon the trial of the indictment against him, when the deposit of this $1,000 would have secured his release, and have relieved Mrs. Powers from all liability, unless it was to give respondent a chance to use this money? Mrs. Powers would have needed no security, if cash bail had been given. Again, respondent drew and attached to the bond an affidavit of his wife that she had received no indemnity or promise of indemnity for her liability. If that affidavit is true, Mr. Powers' present story is false.

Concededly Powers did not deposit this money as cash bail for Burke. The evidence shows that he converted it to his own use.

For years Mrs. Powers had taken entire charge of her husband's financial matters. He had no bank account in his own name. All moneys coming into his office were turned over to his wife, and deposited in her name. She had a checking account in the Utica National Bank and Trust Company, a special account in the same bank, and an interest account in the Utica City National Bank. Respondent turned this $1,000 over to his wife on April 5, 1927, and she deposited it in her checking account in the Utica National Bank and Trust Company, and mingled it with funds belonging to her and to her husband. Her account was overdrawn $15.22 at the time, and her balance in the other two banks was but $64.23. On June 15, 1927, she had drawn out all this money and had an overdraft in her checking account of $3.51. So that in two and a half months respondent had spent the entire $1,000 which had been paid him by Foster.

This money was in the nature of a trust fund, and should have been held by Mr. Powers as such. Where money has been deposited with an attorney for a special purpose he holds it as trustee, and is under a strict obligation to keep it separate and apart from his own funds. If he fails so to do, and uses it as his own, he violates his duty, and lays himself open to discipline. (*Matter of Babcock,* 230 App. Div. 323; *Matter of Maged,* 163 id. 880; *Matter of Dobbs,* 173 id. 605; *Matter of Cohn,* 141 id. 511; *Matter of Menzel,* 216 id. 176.)

" This rule has been stated and emphasized so many times that repetition ought to be unnecessary, and excuses for its violation should be ignored." (*Matter of Babcock,* 230 App. Div. 323.)

This same rule would apply if we were to adopt Powers' story that this money was deposited as security for his wife's obligation on her bond. Under those circumstances he would have had no right to use it as his own.

The respondent claims that on September 5, 1928, he segregated and set apart this money in a separate account, and that he is now in a position to turn it over to the rightful owner. It appears that on the above date Mrs. Powers opened two interest accounts in the Citizens Trust Company of Utica, one for $700 in her individual name, and the other for $306 in the name of Margaret C. Powers, special. If we are to accept respondent's theory of the purpose of these accounts, it is somewhat difficult to explain why two accounts were opened instead of one, and why six dollars were added to the deposit in the special account, and why one account is in the individual name of Mrs. Powers and the other is in a special account, and why the deposits were not designated in some manner to indicate their trust character.

But taking respondent's story at its face value, the fact remains that this money was not segregated or set aside for one year and five months after it was paid to him, during all of which time he mingled it with his own funds and used it for his own purposes. His subsequent act does not excuse his original wrong or mitigate his offense. (*Matter of Doody*, 221 App. Div. 15; *Matter of Steinberg*, 193 id. 502.)

This brings us to another charge which is made against the respondent, and which came to light upon the hearing before the referee. We have already called attention to the affidavit which was signed and sworn to by Mrs. Powers, to the effect that she had received no indemnity or promise of indemnity for her liability on Burke's bond. This affidavit was filed in compliance with the requirement of section 554-c of the Code of Criminal Procedure (as added by Laws of 1926, chap. 418), which provides that every person giving bail in a criminal case shall file with the bond or other deposit an affidavit setting forth in detail what security, indemnity or consideration has been promised or given to the surety, and by whom.

If respondent's version of this transaction is correct, this affidavit is false, because, according to his claim, this $1,000 was given as collateral security for any loss which the affiant might be called upon to sustain by reason of the execution of said bond. Respondent was responsible for his wife swearing to this affidavit. The claim which he made upon the hearing that there is a difference between indemnity and security, and that this money was deposited as security and not as indemnity, and that the affidavit, therefore, is technically correct, is a mere quibble and equivocation. To indemnify is " to save harmless; to secure against loss or damage; to insure." (Webster Internat. Dict. [1904 ed.]. See 2 Bouv. Law Dict. [Rawle's 3d Rev.] 1532.)

If we were to judge the respondent upon his own story, we would be compelled to hold him guilty of a serious breach of duty in drawing and attaching this affidavit to Mrs. Powers' bond, even assuming that he was not technically guilty of the crime of subornation of perjury. The Legislature had a definite purpose in mind when it required the statement set forth in section 554-c of the Code of Criminal Procedure to be attached to all bail bonds. No one knew that any better than Mr. Powers. He was no novice in the practice of law. He had defended many cases in the criminal courts. He owed the duty to the court of frankly and honestly disclosing the situation as he knew it to exist, and not to gloss the matter over, and deceive the court, even if the deceit did not go to the extent of constituting a crime.

However, in view of the new finding which we have made that this money was not paid to Powers as security for his wife's liability on this bond, but as cash bail, we must hold that this affidavit is not false.

We have reached the conclusion that respondent has been guilty of professional misconduct of so serious a character that it cannot be overlooked, or lightly brushed aside.

This brings us to the question of punishment. This is always a troublesome matter. Precedents are of but little aid.

Mr. Powers has practiced his profession in the city of Utica since his admission to the bar in September, 1911. So far as the record shows, he has never been in trouble before. Prominent members of the Oneida county bar have testified to his previous good character. We fail, however, to find any excuse for this serious breach of trust on his part. Attorneys have repeatedly been warned of the danger which lurks in the disobedience of the accepted and well-recognized rule relating to money held by them in trust. We also feel that Mr. Powers has been evasive and equivocal upon the trial of these charges.

Balancing the gravity of the offense committed with the apparent good record of Mr. Powers during the years he has been in practice, we have reached the conclusion that the extreme penalty of disbarment should not be resorted to in this case, but that a suspension from practice for two years would be a proper punishment for his misconduct, and a sufficient warning to others who may be tempted to make the same mistake which Mr. Powers has made.

All concur.

The report of the referee, in so far as it fails to find that the sum of $1,000 was given to the respondent to be used as cash bail, is disapproved and a finding that the money was so given is made; otherwise the findings of the referee are approved, and this court further finds that the respondent was guilty of professional misconduct in preparing and submitting the affidavit of his wife in respect to the bail bond and security therefor, if the respondent's contention in respect to the purpose for which the $1,000 was given be accepted, and respondent is suspended from practice for two years and thereafter until the further order of the court.