Original,
No. 5048.

BRODERICK'S CASE.

Argued May 8, 1962.

Decided June 5, 1962.

176

*William Maynard,* Attorney General and *Elmer T. Bourque,* Deputy Attorney General (*Mr. Maynard* orally), *pro se.*

*Stanley M. Burns* (orally), for the defendant.

*Joseph A. Millimet,* President-elect of the Bar Association of the State of New Hampshire (orally), *pro se,* as *amicus curiae.*

KENISON, C. J. An attorney has a duty to protect the interests of a client but the legal and ethical methods of performing this duty are solely the responsibility of the attorney. The attorney cannot escape this responsibility with the excuse that he is only following the instructions of his client or that it was the client who sought advice on how to accomplish a questionable transaction. The requirement that an attorney shall not represent conflicting interests nor favor his own interests to the detriment of his client illustrates the fiduciary nature and nondelegable responsibility of an attorney for his own professional conduct. *Hines* v. *Donovan*, 101 N. H. 239, 244.

The facts alleged in the petition for disciplinary action filed by the Attorney General have not been contested for the purposes of this case. The petition discloses that the defendant participated in the pre-dating of certain letters and contracts, and that he provided a New Hampshire corporation, which he had previously organized, to receive money for services not rendered, and which he knew were not to be rendered. The petition also states that the defendant procured a friend to receive a "finder's fee" which he had not earned and executed a contract for his own legal services for the purpose of influencing his brother-in-law in the performance of his official duties, "including the approval of specifications." These transactions were entered into by the defendant or under his direction with the Foundation Company, Inc. of New York which was awarded the contract for the construction of the Boston Common Garage. The defendant's actions clearly constituted unprofessional conduct. The extent to which these and similar transactions allegedly entered into by other individuals may be criminal offenses are issues awaiting trial in Massachusetts.

The defendant's professional and personal reputation prior to the present proceeding was good and this bears on the extent of the disciplinary action but does not dispense with the necessity for it. Drinker, Legal Ethics, *c.* III (1953). On behalf of the defendant it is contended that he has made an error in judgment which was due to misplaced reliance on others. The fact that he has not "benefited financially" from these transactions and that he returned certain checks is a mitigating factor but does not free him from disciplinary action. *Allen's Case*, 75 N. H. 301. The ancient admonition of Quintilian that an advocate is not required to throw open the harbor of his eloquence as a port of refuge for pirates has relevance even in the Twentieth Century. See Trumbull,

Materials on the Lawyer's Professional Responsibility, *c.* 9 (1957).

The public and the bar of this state are entitled to be assured that the practice of law is a profession which demands that its members adhere to fiduciary standards of conduct and that the failure to do so will result in expeditious disciplinary action. *Moore's Case,* 98 N. H. 324; *Ford's Case,* 102 N. H. 24; *Harrington's Case,* 100 N. H. 243. See Griswold, The Legal Profession, 25 Cleveland B. J. 39 (1954). On the record before us, the defendant's conduct calls for action now (*Barnard's Case,* 101 N. H. 33) even though subsequent trials in Massachusetts will determine ultimate responsibility for any derelictions which may have occurred in the construction of the Boston Common Garage. The defendant's conduct cannot be condoned whether he acted for friend or foe, relative or stranger. *Moore's Case,* 76 N. H. 227, 228. The defendant is suspended from the practice of law until further order of this court. RSA 311:8; see *Hobb's Case,* 75 N. H. 285, 287.

*So ordered.*

All concurred.