**Jerome HAFTER, Appellant,**

v.

**Ruth FARKAS and Jonathan Farkas, Appellees.**

**No. 828, Docket 73-2829.**

United States Court of Appeals, Second Circuit.

Argued April 4, 1974.

Decided May 31, 1974.

Harry R. Schwartz, New York City, for appellant.

Emanuele J. Sutera, New York City (Grubbs & Sutera, New York City, of counsel), for appellees.

Before HAYS and OAKES, Circuit Judges, and CHRISTENSEN, District Judge.*

PER CURIAM:

In order to appreciate some of the more extraordinary aspects of this appeal, it is first necessary to recount chronologically the legal proceedings that have resulted in the waste of this court's time, a waste solely attributable to the unprofessional attitude and conduct of appellant's counsel herein. We go to the length we do here, although the appeal involves only the sum of $1,034, because this case involves some important considerations in relation to attorneys' obligations to their clients.

On May 3, 1973, a judgment was issued in favor of Jerome Hafter and against Ruth and Jonathan Farkas by the clerk of the United States District Court for the Southern District of New York as approved by Judge Levet in the sum of $1,034. This judgment was the result of a jury verdict in the same amount rendered after a two-day trial before Judge Levet; Hafter's cause of action apparently sounded in tort with jurisdiction being based on diversity of citizenship of the parties. A notice of appeal was filed by Hafter's counsel, Harry R. Schwartz, Esq., but that appeal was not perfected and on July 2, 1973, Mr. Schwartz wrote a letter to the Farkas' counsel requesting that a check be made out to him as attorney. Mr. Schwartz also stated that he was not proceeding with the appeal and enclosed a "satisfaction of judgment" form which he had himself executed. Although the record is not clear, sometime in early July of 1973, a draft in the sum of $1,070.00, which included interest to that date, was issued by the Farkas' insurance company payable to Jerome Hafter and Mr. Schwartz as attorney. By letter of July 11, 1973, Mr. Schwartz returned this draft, which he referred to as a "check," alleging that it should have been made out solely to him in accordance with his letter of July 2, 1973. Another draft payable to the same parties was sent to Mr. Schwartz on July 17, 1973, and this draft was likewise returned by Mr. Schwartz for the same reasons as stated in his letter of July 11, 1973. On July 19, 1973, after consultation with the judgment clerk in the Southern District and an official of the Judicial Conference of the State of New York, both of whom advised that the procedure followed by appellees was accepted practice, appellees' attorney filed the satisfaction of judgment originally executed by Mr. Schwartz. Following the filing, Mr. Schwartz by letter continued to protest the manner in which the judgment had been satisfied. On August 30, 1973, he obtained, on what as far as we can tell was an ex parte basis, an order signed by a district judge, who had so far as appears no other connection with the case, which de-

* Senior United States District Judge for the District of Utah, sitting by designation.

clared the satisfaction of judgment null and void. Mr. Schwartz' motion was apparently made pursuant to Fed.R.Civ.P. 69(a), and, as a proceeding supplementary to and in aid of judgment, might well have been referred to the judge who presided at trial.

In any event, after the entry of this order, Schwartz returned yet another draft which had been issued by appellees' insuror on August 13, 1973. Appellees' counsel came before Judge Levet with the problem by way of a motion made pursuant to Fed.R.Civ.P. 69(a), and on October 17, 1973, Judge Levet signed an order staying execution proceedings which Schwartz had initiated by application to the sheriff of New York County. After hearing both parties, Judge Levet granted appellees' motion and ordered Schwartz to accept a certified check made out to Jerome Hafter and Schwartz as attorney in satisfaction of the judgment and to secure the vacation of the state execution. It is from this order, which is appealable by a party as a matter of right, *see* O'Keefe v. Landow, 289 F.2d 465 (2d Cir. 1961), that Schwartz, apparently without the knowledge of his client, Jerome Hafter, appeals. Schwartz conceded on oral argument that his client had not authorized him to ask or insist that the check in satisfaction be made out only to the attorney as Schwartz so insistently demanded.

Rule 69(a) establishes that the "procedure on execution, in proceedings supplementary to and in aid of a judgment . . . shall be in accordance with the practice and procedure of the state in which the district court is held. . . . ." Schwartz' claim is that, under New York practice and procedure, he cannot be forced to accept in satisfaction of judgment a certified check payable to his client and himself as attorney, where he as attorney without authority asks for payment to himself.

We start with a few basic premises. In New York, as elsewhere, in addition to his other duties and obligations, a lawyer is bound to conduct himself as a fiduciary or trustee occupying the highest position of trust and confidence, so that, in all his relations with his client, it is his duty to exercise and maintain the utmost good faith, honesty, integrity, fairness and fidelity. In re Trybom's Estate, 168 Misc. 484, 6 N.Y.S.2d 29 (Surr.Ct.1938); Krohe v. Goldman, 167 Misc. 930, 4 N.Y.C.Mun.Ct.1938). *See* In re Kelly, 23 N.Y.2d 368, 296 N.Y.S.2d 937, 244 N.E.2d 456 (1968). This fiduciary or trust relationship precludes the attorney from having personal interests antagonistic to those of the client or from obtaining personal advantage or profit out of the relationship without the knowledge or consent of the client. Broderick's Case, 104 N.H. 175, 181 A.2d 647 (1962); In re Goldstein, 7 Terry 450, 85 A.2d 361 (Del.1951). Thus, merely the bringing of the instant appeal without disclosure to the client that he was doing so could well be deemed to constitute a breach of that relationship. *See* In re Babcock, 230 App.Div. 323, 243 N.Y.S. 489 (1930).[1]

Upon the collection or receipt of property or funds for the benefit of

---

[1]. Under Canon 42 of the Canons of Professional Ethics, which were in effect in New York until the adoption of the Code of Professional Responsibility of the New York State Bar Association effective January 1, 1970, *see* New York Judiciary Law (App.) 77 (Cum.Ann.Pocket Part for 1973-74), the taking of an appeal by an attorney without the permission of his client was prohibited even though the attorney was willing to defray the costs of such an appeal. *See* The Association of the Bar of the City of New York & The New York County Lawyers' Association, Opinions of the Committees on Professional Ethics 379 (1956) (No. 658 June 28, 1944) [hereinafter cited as *Opinions*]. In this case, Mr. Schwartz, not having informed his client of the actions taken by him in the court below or in this court, is effectively prosecuting an appeal the very nature of which his client would be unwilling to see prosecuted irrespective of the costs of such prosecution. Mr. Schwartz' actions thus clearly are beyond the conduct thought to be unprofessional in No. 658.

the client it is the duty of the attorney to notify the client promptly and, absent some contrary understanding—here the attorney does not claim any—to pay or remit the same to the client less only proper fees and disbursements as soon as reasonably possible. In re Babcock, *supra;* In re Langfur, 227 App.Div. 468, 238 N.Y.S. 498 (1932).[2] Money collected by an attorney and not paid over is ordinarily held as a trustee rather than as a debtor. In re Peltz, 23 App.Div.2d 173, 259 N.Y.S.2d 522 (1965); In re Powers, 235 App.Div. 382, 257 N.Y.S. 113 (1932); In re Babcock, *supra.* The funds cannot be used for the attorney's own purposes. In re Simons, 211 App. Div. 659, 208 N.Y.S. 51 (1925).

In addition to these general principles, as set forth in New York case law, the New York Civil Practice Law and Rules (CPLR) expresses the will of the New York legislature in this area. Although no provision of the CPLR deals directly with the narrow question presented here —whether a certified check payable to the plaintiff and his attorney as attorney is sufficient to require the plaintiff to execute a satisfaction of judgment— CPLR § 5020, bearing on satisfaction-pieces, is quite relevant. That provision requires that a person entitled to enforce a judgment, including the attorney of record if within five years of the judgment's being rendered, must execute a satisfaction piece when he receives satisfaction for the judgment. The Supplementary Practice Commentary to § 5020 states that it is

> wiser whenever possible to have the satisfaction piece executed by the judgment creditor himself. The only thing the judgment debtor should ascertain is whether the creditor's attorney has any lien on the proceeds. If the remotest doubt exists about that,

the judgment debtor may reasonably insist that the satisfaction piece be executed by both creditor and attorney, or executed by one and endorsed with an approval by the other.

CPLR § 5020, Practice Commentary (McKinney's Cum.Ann.Pocket Part 1973–1974, at 234–235). The Practice Commentary prior to the 1969 amendment to § 5020, an amendment irrelevant for our purposes, had stated that "the usual practice among attorneys is to have the client execute the satisfaction-piece." CPLR § 5020, Practice Commentary (McKinney 1963). Thus, § 5020 and the commentary thereto indicate that, under New York law, the judgment is to be paid to the judgment creditor in the first instance, with the judgment debtor being responsible to ascertain whether the attorney of record might have any lien on the proceeds. If any doubt about a lien exists, the debtor is advised to protect himself by getting the signature of both the creditor and the attorney on the satisfaction piece. It would seem to follow that a judgment debtor can ensure that both the creditor and his attorney are made aware of the satisfaction by making that satisfaction payable jointly to them. The district judge below took judicial notice that "it is customary for defense counsel in this district to submit a check to plaintiff's counsel payable to the attorney and the judgment-creditor-client." We read this statement as the district court's conclusion, based on New York practice and procedure, that the joint-payee check was a proper tender of satisfaction.

■■ That Schwartz did not and has not followed commonly accepted practice seems clear from the record before us. He, rather than his client, made out and executed a satisfaction of judgment before satisfaction had even been tendered.

---

2. Schwartz' conduct here in never informing his client of the receipt of the first or subsequent checks would appear to be a clear violation of Disciplinary Rule 9–102(B)(1) of the Code of Professional Responsibility, Judiciary Law Appendix, which states that "A lawyer shall . . . [p]romptly notify a client of the receipt of his funds, securities, or other properties." Schwartz makes no claim of inability, present or past, so to inform Mr. Hafter, whose interest he claims to represent on this appeal. See also ABA Canon 11.

His conduct since that initial departure from the usual practice has been summarized above and led to the district court's finding that he had "by his own acts precluded plaintiff-judgment-creditor [Jerome Hafter] from obtaining payment of the amount of the verdict." Schwartz' reliance on Altenau v. Masterson, 161 Misc. 433, 292 N.Y.S. 299 (N.Y.C.Mun.Ct.1936), a case which, as far as we can tell, has never been cited subsequently by a state court, does not carry his point. In *Altenau*, the judgment debtor sought an order requiring the judgment creditor to accept in satisfaction of the judgment a check made out to both creditor and his attorney. The court, noting several procedural irregularities in the manner in which the judgment debtor had tendered the satisfaction, stated in dictum that "There is no provision in the Civil Practice Act or in the Municipal Court Code which sustains . . . making the check payable to both attorney and client." As we have pointed out, the practice of having the judgment creditor rather than his attorney execute the satisfaction piece belies the validity of the *Altenau* dictum. The opinions of the governing tribunals, the Association of the Bar of the City of New York and the New York County Lawyers' Association, whose members are fully aware of the commonly accepted practices observed by members of the bar, do not support the *Altenau* result. In one case, an attorney had received a $25 check payable to his client where the claim itself was at least five years old *and* the client could not be located after diligent effort. The opinion of the Committee stated that it would be professionally improper for the attorney to deposit those funds in his own account, noting without questioning the fact that the "state insurance department refuses to issue a check in any other form." *Opinions* 157–58 (No. 296 Nov. 21, 1933). In another opinion handed down after *Altenau*, an attorney had recovered back wages on behalf of a group of New York City employees, which awards were less than the stipulated fees. Checks were made out to each "client or attorney," a procedure unquestioned by the Committee, and the attorney was cautioned that, even on those facts, "money of a client or collected for the client coming into an attorney's possession should be reported and accounted for promptly and should not under any circumstances be co-mingle [sic] with his own or be used by him." *Opinions* 391 (No. 676 Feb. 28, 1945). These opinions, while they are not legal determinations, are persuasive evidence of long-standing practice within the New York bar. The *Altenau* court was certainly correct in saying that no law authorized such a practice then, nor does one now; the *Altenau* court could equally have said that no law prohibited such a practice, nor does one now.

In affirming the district court's order below, we want to make clear to Schwartz and members of the bar generally that this court, in the exercise of our supervisory power over attorneys coming before us, and in light of our heavy caseloads, is less than pleased to entertain the petty complaints of attorneys—particularly in apparent antagonism to their clients' interests—which can only serve to increase the expense of litigation and the pressure on an overloaded system of justice. Since this appeal was concededly taken by counsel without the consent of his client, we want to remove any doubt that may exist as to whether Mr. Hafter may be personally charged with the costs of the appeal or the costs of the action below. He may not. Mr. Schwartz is directed personally to absorb such costs as his own actions have entailed and to comply with Judge Levet's order posthaste.

Judgment affirmed, in accordance with opinion.