Original
No. 79-073

CARROLL'S CASE

December 4, 1985

*Harold W. Perkins*, of Concord, and *James L. DeHart*, of Concord (*Mr. DeHart* orally), for the Committee on Professional Conduct.

*William E. Brennan*, of Manchester, by brief and orally, for the respondent.

PER CURIAM. The respondent is a member of the bar who has been suspended from practice and has been convicted of a "serious crime" within the meaning of Supreme Court Rule 37(7). The issue before us is "the extent of final discipline to be imposed." *Id.* § (7)(d).

On April 5, 1979, this court issued an order accepting the respondent's voluntary abstention from the practice of law and suspending him until further order of the court. On April 4, 1980, the respondent pleaded guilty to an indictment under RSA 637:3, charging him with theft by unauthorized taking or transfer. The superior court sentenced him to a prison term, which was suspended, ordered him to pay a $2,000 fine, and placed him on probation. One condition of probation was restitution of $38,273 to his victims.

Theft by unauthorized taking or transfer is a "serious crime" within the meaning of Supreme Court Rule 37(7). Upon receipt of the record of respondent's conviction, this court, pursuant to Rule 37(7)(d), instituted a formal disciplinary proceeding and assigned the matter to a referee to make factual findings and recommend the extent of final discipline to be imposed. The late retired Chief Justice Edward J. Lampron acted as referee and filed a report following a July 3, 1980 hearing.

The referee reported that the "money [the respondent] owes has already been reimbursed to the extent of 85 to 90 percent of what is owed." He commented favorably on the respondent's cooperation with the court's Committee on Professional Conduct, his repentance and his work for a trucking firm. The referee noted that the Committee on Professional Conduct had recommended discipline in the form of suspension from practice for three years from the date the petitioner's original suspension began. The referee recommended continued suspension until April 5, 1982, or until further order of the court. He recommended that if the respondent had met certain conditions by February 5, 1982, he should be permitted to file a petition for reinstatement. The conditions included payment of a fine and payment in full of all obligations resulting from his defalcations. The Committee on Professional Conduct responded to the court that it had no objection to the recommendation and approved of the proposed conditions for reinstatement.

Because this court was aware of at least one civil action against

the respondent which was related to and likely to indicate the extent of the defalcations, the court chose to take no immediate action on the referee's report. Rather, in January and again in September of 1981, the committee and respondent's counsel were asked when the civil action might be concluded. Counsel replied that the action would probably be over by the end of 1981. Although one civil action has proceeded to judgment, another is still pending today. In August, 1983, the respondent chose to wait no longer and inquired how he might be reinstated to practice.

By this time, the first referee was dead. Before his death, however, he had learned through the public press of the claims being made in the civil actions and had advised the court that the respondent had not disclosed the subject of one of the civil actions.

In January, 1984, this court entered an order indicating that it would not consider the first referee's report. The court noted how much time had passed while all parties waited for the conclusion of the civil actions, and noted the possibility that the first referee may not have been aware of all relevant facts. Consequently, the court appointed Retired Justice Maurice P. Bois as a new referee to determine facts and make a new recommendation.

Justice Bois considered the late referee's report, but supplemented it significantly. He addressed the progress of the relevant civil actions, and noted that proceedings had been completed for winding up the respondent's law partnership. Justice Bois' report, together with correspondence between this court and the respondent's attorney, indicate that the respondent is obligated to pay approximately $5,000 to his former law partner. At the time of Justice Bois' ruling, other civil actions were still pending, and at least one is now pending, in which the respondent's counsel admits that the respondent is liable for at least $75,000. The respondent also owes $138,000 to relatives and friends who came to his aid, to the IRS, and to his counsel. He continues to owe at least $10,000 in gambling debts. He thus owes at least $223,000 to gamblers, victims of his theft, his defense counsel, the government, and his relatives and friends. Although the respondent has acted in a manner consistent with Chief Justice Lampron's recommendations to rehabilitate himself over the course of his suspension, there were facts unknown to Chief Justice Lampron which were adverse to the respondent. Acknowledging the respondent's efforts, Justice Bois' report nevertheless recommended that this court enter an order disbarring the respondent.

Apparently, Justice Bois concluded that the respondent, who has committed a serious crime by misusing a client's funds, should not thereafter be put in a similar position of trust and that the nature of

the respondent's crime coupled with the magnitude of his debt militate against permitting the respondent to practice law.

■■ We have considered the mitigating factors in this case, and we are cognizant of the respondent's efforts to rehabilitate himself. This court, however, "is obligated to discipline a lawyer appropriately when the lawyer's conduct seriously deviates from professional norms (citations omitted)." *Nardi's Case*, 122 N.H. 277, 278, 444 A.2d 512, 513 (1982). As we stated in *Broderick's Case*, 106 N.H. 562, 215 A.2d 705 (1965), the purpose of disciplinary action is to assure the public and the bar that "the practice of law is a profession which demands that its members adhere to fiduciary standards of conduct and that the failure to do so will result in expeditious disciplinary action." *Id.* at 563, 215 A.2d at 705 (quoting *Broderick's Case*, 104 N.H. 175, 179, 181 A.2d 647, 650 (1962)).

■ Ordinarily, the misuse of a client's funds justifies disbarment. *Eshleman's Case*, 126 N.H. 1, 4, 489 A.2d 571, 574 (1985); *Harrington's Case*, 100 N.H. 243, 244, 123 A.2d 396, 396 (1956). *See also Delano's Case*, 58 N.H. 5 (1876).

■ The facts of this case adequately support the report and recommendation of Justice Bois. The respondent is accordingly disbarred as an attorney in this State.

*So ordered.*

BROCK and JOHNSON, JJ., did not sit; DALIANIS, J., superior court justice, sat by special assignment pursuant to RSA 490:3; KING, C.J., dissented.

KING, C.J., dissenting: The respondent, James E. Carroll, was suspended from the practice of law in 1979 for activities relating to compulsive gambling and a conviction for theft by unauthorized taking. In 1984, following a hearing, a court-appointed referee recommended that the respondent be disbarred. Because the respondent has acted to rehabilitate himself in reliance on the recommendations made in 1980 by a previous referee as to the terms of the suspension, I would conclude that the respondent may qualify for reinstatement, if he satisfies the conditions set forth herein.

On April 5, 1979, the Professional Conduct Committee (committee) filed a petition with this court requesting the suspension from the practice of law of the respondent, James E. Carroll. On that same day, the respondent voluntarily suspended himself from further practice of law. We ordered a suspension pursuant to Supreme Court Rule 37(7)(i) "until further order of the court without prejudice to any other proceedings that may follow."

In 1980, the respondent entered a plea of guilty in Merrimack County Superior Court to the offense of theft by unauthorized taking and transfer. The supreme court then referred the matter pursuant to its Rule 37(7)(d) to the Honorable Edward J. Lampron, retired Chief Justice of the Supreme Court, for further proceedings in which the sole issue was the extent of the final discipline to be imposed. A hearing was conducted by Chief Justice Lampron on July 3, 1980. Thereafter, Chief Justice Lampron submitted his report, recommending that, subject to certain conditions, the respondent's suspension should continue until April 5, 1982, or until further order of the supreme court. Chief Justice Lampron further ruled that if by February 5, 1982, the respondent had paid his fine in full, repaid his debts, continued his membership in Gamblers Anonymous and was released from psychotherapy or agreed to continue such treatments if recommended by the treating physician, he could file a petition for reinstatement to the practice of law, to take effect no sooner than April 5, 1982.

Since then, we have issued an order reading in part as follows:

"Final action on the August 1980 report and recommendation of the late retired Chief Justice Edward J. Lampron, sitting as a referee, regarding final discipline to be imposed on James E. Carroll in accordance with Rule 37(7)(d) was deferred due to the pendency of various civil actions involving Mr. Carroll in Merrimack County Superior Court."

"In consideration of the length of time which has passed since Judge Lampron's report and recommendation, and of the possibility that there may have been significant subsequent developments relevant to the final disposition of this matter, the Court has determined that it will not consider Judge Lampron's report and recommendation and hereby orders that a new hearing be held under Rule 37(7)(d). For such purpose, the matter is referred to Retired Supreme Court Justice Maurice P. Bois, who shall hold a hearing at which the parties shall present evidence regarding the current status of civil proceedings involving Mr. Carroll and Mr. Carroll's activities since the hearing on July 3, 1980 and their respective recommendations concerning the extent of final discipline which should now be imposed."

Justice Bois reviewed Chief Justice Lampron's report and familiarized himself with the record in this case and the records of the Merrimack County Superior Court; however, while he accepted and

incorporated by reference the report of Chief Justice Lampron, Justice Bois did not concur in his recommendations.

The testimony presented at the hearing before Justice Bois indicated that a related civil action involving the respondent's former partner, which was a petition for winding up the partnership affairs, had been resolved by agreement. According to testimony at the hearing, several related civil actions were still pending.

At the hearing, the respondent submitted a list of ten friends and relatives who had come to his aid and to whom was owed approximately $83,000. The respondent represented that these individuals would not seek recourse to the courts for repayment, but had faith that he would eventually repay them. There was also evidence that $45,000 was owed to the Internal Revenue Service and $10,000 to his attorneys for legal services, for a total of $138,000 owed over and above amounts involved in the previously mentioned civil claims. Additionally, it was admitted by the respondent that he owed "street money" to bookies, including money owed to one person in the amount of $10,000. The respondent testified at the hearing that no one had attempted to collect these debts or contacted him with respect to them.

The respondent testified that, in addition to other part-time employment, he was employed as a paralegal with a New Hampshire law firm and felt that the suspension had served its purpose. He also stated that he was rehabilitated and, by studying, had kept abreast of changes in the law and was ready to resume practice as a member of the New Hampshire bar.

Justice Bois found that the respondent had conducted himself in an exemplary manner during the course of his suspension. He stated that although he sympathized with the respondent, whom he commended for the progress he had made in his rehabilitation and the rebuilding of his life, Justice Bois was not persuaded, on the state of the record, that the interests of the public and the bar of this State would be served if the respondent were to be reinstated to the practice of law. He therefore recommended that this court enter an order that the respondent be disbarred.

At the outset, I would note that the respondent acted in reliance on Chief Justice Lampron's recommendations to rehabilitate himself over the course of his suspension. Yet, despite acknowledging the respondent's efforts, Justice Bois' report recommended that the respondent be disbarred. I am unable to adopt the recommendation to disbar the respondent. *See Eshleman's Case,* 126 N.H. 1, 3, 4, 489 A.2d 571, 572 (1985) (this court is empowered to suspend or disbar an attorney to protect the public and preserve the integrity of the bar).

"The supreme court is obligated to discipline a lawyer appropriately when the lawyer's conduct seriously deviates from professional norms." *Nardi's Case*, 122 N.H. 277, 278, 444 A.2d 512, 514 (1982). As we stated in *Broderick's Case*, 106 N.H. 562, 215 A.2d 705 (1965), the purpose of disciplinary action is to assure the public and the bar that "the practice of law is a profession which demands that its members adhere to fiduciary standards of conduct and that the failure to do so will result in expeditious disciplinary action." *Id.* at 563, 215 A.2d at 705 (quoting *Broderick's Case*, 104 N.H. 175, 179, 181 A.2d 647, 650 (1962)).

Ordinarily, the misuse of a client's funds justifies disbarment. *Eshleman's Case, supra* at 5, 6, 489 A.2d at 574; *Harrington's Case*, 100 N.H. 243, 244, 123 A.2d 396, 396 (1956); *Delano's Case*, 58 N.H. 5 (1876). Nevertheless, "[i]n determining the discipline to be imposed in a given case, this court must consider mitigating factors . . . ." *Eshleman's Case, supra* at 6, 489 A.2d at 574; *see Mussman's Case*, 111 N.H. 402, 412, 286 A.2d 614, 620 (1971).

"The range of discipline to be imposed rests largely upon the facts and circumstances of each case." *Nardi's Case supra.* In the past, this court has recognized a variety of mitigating circumstances. *See St. Pierre's Case*, 113 N.H. 198, 304 A.2d 88 (1973) (addiction to medication); *Wholey's Case*, 110 N.H. 449, 270 A.2d 609 (1970) (restoration of misapplied funds, payment of fines, serving sentence of probation for offenses for which convicted, financial difficulties and resort to drink); *Broderick's Case*, 104 N.H. 175, 181 A.2d 647 (1962) (lawyer's previously good personal and professional reputation); *see also Matter of Miller*, 56 A.D.2d 109, 111, 391 N.Y.S.2d 596, 597–98 (1977) (restitution of misapplied client funds is mitigating factor).

The respondent's significant reliance on the favorable recommendation of Justice Lampron is a mitigating factor. He has modified his conduct for a period of years in the hope of reinstatement. He has made restitution, has foregone more lucrative employment in order to work as a paralegal, and has continued to involve himself in Gamblers Anonymous. Because such reliance is an overriding mitigating circumstance in this instance, there should be some light at the end of the tunnel and some hope of readmission to membership in the bar.

Accordingly, the "final discipline" I would impose pursuant to Supreme Court Rule 37(7)(d) is an indefinite suspension until further order of this court. The respondent should be allowed to apply for readmission to the bar upon demonstrating to this court that he has satisfactorily met the following terms and conditions. This court will require full payment or final settlement, without reservation, of all debts and obligations owed by the respondent which,

directly or indirectly, resulted from his defalcations in the practice of law. Proof of such repayment must be filed under oath in this court and meet with its approval prior to any action for a petition to be reinstated. In the event that he satisfactorily meets the requirements of settlement or payment of his obligations, the respondent must, for the first five full years of his readmission to the bar, associate himself in the practice of the law with such attorney or attorneys, on such terms and conditions, and with such supervision as this court shall approve.