## CLARENCE E. EBERT *vs.* GEORGE D. HASKELL.

Suffolk.   January 21, 1914. — February 28, 1914.

Present: RUGG, C. J., LORING, SHELDON, DE COURCY, & CROSBY, JJ.

*Agency*, Duty of fidelity. *Broker. Contract*, Validity. *Evidence*, Admissions and confessions.

A real estate broker employed to sell certain property bears a fiduciary relation to his principal that requires him, not only to exert his skill and best efforts, but also to disclose to his principal all facts material to the transaction that come to his knowledge.

A broker, who was employed to procure a purchaser for certain real estate, cannot maintain an action against the purchaser so procured by him to recover a sum of money which was to be paid to him by the defendant for a violation of his duty to his principal in concealing the name of the defendant, who wished it concealed lest its disclosure should result in his being obliged to pay a larger price for the property.

Where a party to an action testifying in his own behalf makes a statement, which taken by itself may tend to prove a fact in his favor, but which is so explained by the rest of his testimony as to leave no possible doubt that he concedes the opposite to have been the truth, the conceded fact is to be taken as shown by the party's whole testimony, and it is not a case where the jury may determine which of two inconsistent statements is the true one.

CONTRACT, alleging in the second count, which alone is material, that on or about October 1, 1909, the plaintiff, having been authorized by the trustees of the Boston Young Men's Christian Association to sell some property situated at the corner of Berkeley and Boylston Streets in Boston, offered that property for sale to the defendant, and that the defendant promised him that, if the defendant could effect a sale of the property to any of the defendant's clients, he would pay the plaintiff one per cent of the purchase price, provided, however, that the plaintiff would promise not to mention to the trustees of the Boston Young Men's Christian Association the fact that the defendant was considering a purchase of the property; that the plaintiff did so promise and did faithfully keep this promise; and that thereafter the defendant did effect a sale of the property to one of the defendant's clients.   Writ dated July 1, 1910.

The answer, besides a general denial, alleged that, if any such arrangement or agreement as alleged was made between the plaintiff and the defendant, it "was not disclosed or made known to the Young Men's Christian Association or any of its officers or assented to by them."

In the Superior Court the case was tried before *Lawton*, J. The evidence is described in the opinion. At the close of the evidence the judge submitted to the jury the following question:

"Was the contract set out in the second count of the plaintiff's amended declaration made between the defendant and the plaintiff?" The jury answered this question in the affirmative. The judge then ordered the jury to return a verdict for the defendant, and by agreement of the parties reported the case for determination by this court, with a stipulation, that, if upon the answer of the jury a verdict for the plaintiff was warranted, judgment was to be entered for the plaintiff in the sum of $5,100 with interest from July 1, 1910, unless by the improper admission or rejection of evidence substantial rights of the defendant had been affected injuriously, in which case a new trial should be ordered; otherwise, judgment was to be entered on the verdict.

The evidence, as reported by the judge, is described in the opinion. Mehaffey, there mentioned, was the general secretary of the Boston Young Men's Christian Association, from whom the plaintiff secured permission to try to find a purchaser for the above mentioned property of the association.

*C. Brewer*, for the plaintiff.

*J. Noble*, (*F. R. Boyd* with him,) for the defendant.

SHELDON, J. The plaintiff was not a mere middleman charged with no other duty than that of bringing possible purchasers into communication with the owner of the property. In the second count of his declaration, the only one upon which he relied at the trial, he averred that he had been authorized by the trustees of the Boston Young Men's Christian Association to sell the property, and that he offered it for sale to the defendant. His testimony at the trial, although apparently he sometimes sought to avoid calling himself a broker, was to the same effect. But in legal intendment he described himself always as an agent or broker, and not as a mere middleman. Accordingly he owed to the owner all the

duties of a broker employed to sell the property, and not merely those of a middleman who undertakes nothing more than to bring the parties together and leave them to make their own bargains. It follows that such cases as *Rupp* v. *Sampson*, 16 Gray, 398, can give him no comfort.

As such a broker the plaintiff was bound not to put himself in a position antagonistic to the owner's interests; *Quinn* v. *Burton*, 195 Mass. 277; and he could not enforce against any party to the transaction an agreement by which he should pledge himself to conduct inconsistent with this obligation on his part. There was a fiduciary relation between the plaintiff and his principal, the owner of the property, and he was bound, not only to exert his skill and best efforts for the benefit of his principal, but to disclose to the latter all facts material to the transaction which should come to his own knowledge. *Young* v. *Hughes*, 5 Stew. 372. *Beury* v. *Davis*, 111 Va. 581, 588. *Pratt* v. *Patterson*, 112 Penn. St. 475. *Hobart* v. *Sherburne*, 66 Minn. 171. He can enforce no agreement relating to the sale of the property made by him either with his principal or with a third party, by which he undertakes to do anything or to subject himself to the temptation of doing anything inconsistent with the full discharge of his obligations toward his principal. *Sullivan* v. *Tufts*, 203 Mass. 155. The courts will refuse to enforce such a contract, not merely if its avowed purpose is to bring about the doing of unlawful acts, but if by making it and complying with it the plaintiff put himself into a position where there was a strong inducement for him to violate his duty to his principal, where he became subject to a wrong influence to do what might affect injuriously the interests of his principal. *Fuller* v. *Dame*, 18 Pick. 472, 481. If this was the case, it is not material whether the principal actually suffered loss or injury. *Quinn* v. *Burton*, 195 Mass. 277, 279, and cases there cited.

The name of the proposed purchaser, or of the firm by which the defendant was employed and which stood in the position of a purchaser, was highly material here, especially in view of the fact that the plaintiff's contention is that the reason for the purchaser's desire to keep this secret was, as the plaintiff was informed, an apprehension that if the name was made known a higher price might be demanded for the property. In this respect the

case is unlike *Veasey* v. *Carson*, 177 Mass. 117. See *Pratt* v. *Patterson*, 112 Penn. St. 475, 479; *Wilkinson* v. *McCullough*, 196 Penn. St. 205; *Young* v. *Hughes*, 5 Stew. 372.

The plaintiff contends that he communicated to Mehaffey the fact that the proposed purchaser desired to keep his name secret, and that Mehaffey acquiesced in such concealment. But the plaintiff has not contended that he communicated even to Mehaffey his bargain with the defendant that the latter should pay him a commission if he would not disclose the fact that the defendant or one whom the defendant represented was considering a purchase of the property, or the further fact that the reason of the defendant's desire for this secrecy was that whenever his employers were known as buyers they generally had to pay more for the property than they cared to pay.

It is true that the plaintiff said in one part of his testimony that he disclosed to Mehaffey everything that he had done with the defendant except to state the name of the possible purchaser. But this is so explained in the rest of his testimony as to leave it open to no possible doubt that he did not disclose to Mehaffey either his own secret bargain with the defendant or the reason that had been given by the defendant for desiring secrecy. The conceded facts here are shown by the whole of the plaintiff's testimony; it is not merely a case of inconsistent statements made by him in different parts of his testimony, where the jury must determine which of them are true, as in *Cameron* v. *New England Telephone & Telegraph Co.* 182 Mass. 310, and *Larson* v. *Boston Elevated Railway*, 212 Mass. 262, 267; it resembles rather *Tupper* v. *Boston Elevated Railway*, 204 Mass. 151, 153.

These were important facts to guide the action of the plaintiff's principal, and it was a breach of his duty not to disclose them. And it may be added that upon the evidence even a full disclosure of the facts to Mehaffey, if nothing more appeared, would not have availed the plaintiff. There was no evidence that Mehaffey had authority to consent to the plaintiff's making such terms with the defendant, or failing to perform all his obligations to the owner of the property, and there was affirmative evidence that Mehaffey had no such authority.

This case much resembles *Pratt* v. *Patterson*, 112 Penn. St. 475, *Wilkinson* v. *McCullough*, 196 Penn. St. 205, and *Talbott* v. *Luckett*,

30 Atl. Rep. (Md.) 565.  It is governed by the principle stated in those decisions.

This conclusion makes it unnecessary to consider the admissibility of the evidence which was received under the defendant's exception.  Judgment must be entered for the defendant on the verdict.

*So ordered.*