WILLIAM TURNER *vs.* ROBERT H. MINASIAN, administrator.

Essex. November 5, 1970. — December 16, 1970.

Present: TAURO, C.J., SPALDING, KIRK, REARDON, & QUIRICO, JJ.

*Practice, Civil*, Exceptions: filing of bill; Death of party. *Broker*, Commission.

Where it appeared in an action that the original defendant died, that his executor was substituted as party defendant, that the executor's seasonable motion to extend the time for filing a bill of exceptions to a certain day was allowed, that the executor died before that day, that more than two months after that day and nearly three months after the executor's death an administrator with the will annexed of the goods not already administered of the estate of the original defendant was appointed, and that without undue delay following his appointment the administrator filed an appearance in the action and a bill of exceptions, it was held that in the circumstances the trial judge did not err in allowing the bill. [426-427]

In an action by a real estate broker, evidence warranted a finding that the owner of certain property who engaged the plaintiff to sell it, a prospect who was first interested in the property by the plaintiff, and an abutter of the property who was suggested to the prospect by the plaintiff as one with whom the prospect might "get together" and

"develop" the property and who acquired title thereto in his own name by a deed from the owner and on the same day conveyed a one-half undivided interest therein to the prospect, intended to deprive the plaintiff of his commission and to share the amount thereof among themselves through a reduction in the price paid the owner, and a conclusion that the owner was liable for a commission was warranted. [429–430]

CONTRACT. Writ in the Superior Court dated February 11, 1966.

The action was tried before *Moynihan, J.*

*Nicholas S. Koshivos* for the plaintiff.

*Salvatore J. Basile* for the defendant.

SPALDING, J. This is an action of contract in which the plaintiff, a real estate broker, sought to recover a commission. A jury verdict for the plaintiff was recorded under leave reserved. The case is here on bills of exceptions of both the plaintiff and the defendant. The plaintiff's bill challenges the correctness of the judge's action in denying his motion to disallow the defendant's substituted bill of exceptions. The defendant's bill brings before us the correctness of the judge's rulings in denying his motion for a directed verdict and in refusing to enter a verdict in his favor under leave reserved. The original defendant, William H. Bailey (Bailey), died during the pendency of the action, and his executor, Edward L. Lanigan, was substituted as the defendant.

## THE PLAINTIFF'S EXCEPTIONS.

On December 9, 1968, the substituted defendant Mr. Lanigan seasonably filed a motion (assented to by the plaintiff) to extend the time for filing his bill of exceptions to January 15, 1969. This motion was allowed. On January 2, 1969, Mr. Lanigan died, and on January 6, 1969, a suggestion of death was filed by his counsel. On March 20, 1969, Robert H. Minasian was appointed administrator with the will annexed of the goods not already administered of Bailey's estate. On April 28, 1969, an appearance for Minasian and the defendant's bill of exceptions were filed. Thereafter the plaintiff filed a motion to disallow the de-

fendant's bill on the ground that it was filed too late. This motion was denied subject to the plaintiff's exception.

There appears to be no mechanism in our statutes by which the filing deadline would be tolled pending the appearance of a legal successor to a decedent. See G. L. c. 231, § 113, and *Raymond Coughlin Elec. Co. Inc.* v. *Spear Constr. Corp.* 350 Mass. 407.

On the death of Mr. Lanigan there was no legal representative before the court and counsel's authority was automatically terminated by his death. *Chandler* v. *Dunlop*, 311 Mass. 1, 5. No effective action could have been taken until a legal representative was made a party. *Barnes* v. *Barnes*, 291 Mass. 383, 385.

No prejudice to the plaintiff has been shown by the delay from January 15 until April 28, and doubtless a motion for further extension, had a legal successor to Mr. Lanigan made such a motion prior to January 15, would have been allowed. Further, no allegation has been made that the defendant administrator delayed unduly following his appointment on March 20, 1969, in filing his appearance. We are of opinion that in these circumstances the judge did not err in allowing the defendant's bill of exceptions. Our belief in the correctness of this conclusion is strengthened by St. 1945, c. 328, which amended G. L. c. 231, § 113. While this amendment does not specifically apply to the case at hand it nevertheless evinces a legislative intent to grant greater latitude to the court in allowing bills of exceptions which have not been seasonably filed. Moreover, it would be a reproach to the administration of justice if a party, not chargeable with fault or neglect, should lose his right of review because of a fortuitous event beyond his control. See *Brooks* v. *National Shawmut Bank*, 323 Mass. 677, 681–683.

## The Defendant's Exceptions.

The denial of the defendant's motions for a directed verdict and for the entry of a verdict in his favor under leave reserved present the same question. *Berwick & Smith Co.* v. *Salem Press, Inc.* 331 Mass. 196. The evidence most favor-

Turner *v.* Minasian.

able to the plaintiff is summarized as follows. The plaintiff, a real estate broker, asked Bailey if he could list for sale the property where Bailey lived. Bailey refused this request, but told the plaintiff that he had "a piece of property consisting of 30 acres on Chandler Road [Andover] which he was interested in selling." Bailey told the plaintiff that he should ask $27,000 for the property and that he, Bailey, would be willing to negotiate and that whatever figure was arrived at "I'll pay you your commission." A sketch of the property to be sold was prepared by the plaintiff and submitted to Bailey who instructed the plaintiff to discuss the listing with, and refer all offers to, his attorney, Mr. Lanigan. The plaintiff talked with Mr. Lanigan, who informed him that he could have an open listing but not an exclusive one.[1] The plaintiff was to have a commission of ten per cent.

On September 13, 1965, the plaintiff showed the property to one Robert O. Rabenius (Rabenius) and talked to him several times. Rabenius told the plaintiff that "a Mr. Belisle had shown interest in the property" and that he would talk to him about it. The plaintiff asked Rabenius if "he found anything wrong with . . . [the property] and he answered in the negative." The plaintiff suggested that Rabenius and Belisle, who owned land abutting the Bailey property, "get together and they could develop it." Rabenius agreed this was a good idea and he said that he would talk it over with Belisle. To the plaintiff's suggestion that the plaintiff get in touch with Belisle, Rabenius replied that it was not necessary and that he would keep in touch with the plaintiff.

Shortly thereafter the plaintiff got in touch with Rabenius again and Rabenius stated that he might be interested in purchasing the property on a "part payment basis over a five year period." The plaintiff informed Mr. Lanigan of this proposal, but he rejected it. Sometime in November the plaintiff talked with Rabenius who told him that he

---

[1] An "open listing" was defined by Mr. Lanigan as one where the property may be sold at the indicated price but the owner reserves the right to sell it himself and list it with other brokers.

had "changed his mind and was backing away from his offer" but "would be willing to talk to him about it in the Spring or next Summer." At the end of 1965 or early in 1966 the plaintiff called Mr. Lanigan "to inquire about the status of the Bailey land. He was advised that an agreement for the sale of it had been entered into by Bailey with someone else." Subsequently the plaintiff learned that the property had been sold to Belisle. In the latter part of January upon learning from Mr. Lanigan that Rabenius had "ended up with a half interest in the land sold to Belisle," the plaintiff said he was entitled to a commission and would sue Bailey for it. Belisle acquired title to the property in question in his own name by a deed from Bailey dated January 17, 1966, and on the same day conveyed a one-half undivided interest in it to Rabenius. Before the execution of the purchase and sale agreement (November 3, 1965) Belisle informed Mr. Lanigan that he had never seen any broker in connection with the property and a provision was inserted in the agreement "that no broker's commission on the sale was to be paid." The price paid for the property was $25,000.

To prevail, the plaintiff had to prove that he procured a buyer ready, willing, and able to buy the defendant's property on the terms of the defendant, and that his activities were the operating, predominating, and efficient cause of the sale. *Bowes* v. *Henry,* 228 Mass. 341, 343. *Bresnahan* v. *Brighton Ave. Baptist Church,* 279 Mass. 300, 307–308. If the evidence supports such a finding in favor of the plaintiff as a reasonable inference, there was an issue for the jury. *Kelly* v. *Railway Exp. Agency, Inc.* 315 Mass. 301, 302.

We think the evidence could warrant the following interpretation. The plaintiff interested Rabenius in the land. The subsequent decision of Rabenius and Belisle to become one-half owners of the land could have been found to be the direct result of the plaintiff's first interesting Rabenius in the land. The form the transfer took would warrant the inference that it was dictated by a desire of the parties to avoid paying a broker's fee. By proceeding as they did,

Rabenius and Belisle obtained joint interests in the land for a price of $25,000 (a saving of $2,000) while Bailey, the seller, received this entire amount without any brokerage fee (a net gain of $700). This is so because if the land were sold to Rabenius directly or to him and Belisle jointly under the original terms of sale, they would have ended up paying $27,000, while Bailey's share would be this amount minus a ten per cent broker's fee, or $24,300. In other words, the jury could have reasonably inferred from the evidence that Bailey, Belisle and Rabenius intended to deprive the plaintiff of his commission and share it among themselves. Compare *Thornton* v. *Forbes*, 326 Mass. 308, 311. The case was rightly submitted to the jury.

*Plaintiff's exceptions overruled.*

*Defendant's exceptions overruled.*