399 A.2d 485.

CORNELIUS A. BOTTOMLEY, *d.b.a.*
NEW ENGLAND INVESTMENT PROPERTIES CO.
*vs.* RONALD C. COFFIN, *Trustee, et al.*

MARCH 27, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

DORIS, J. The defendant, Ronald C. Coffin, has appealed from a judgment for the plaintiff, Cornelius A. Bottomley, in a quantum meruit action for a finder's fee in connection with the sale of a nursing home. For the reasons stated herein we affirm the judgment entered below.

Bottomley is a seller of businesses who specializes in the sale of nursing homes. On October 19, 1973, he contacted Ernest Beaulieu, a member of the Rhode Island Nursing Home Association, regarding a nursing home for sale in New Bedford. Beaulieu indicated that although he was not interested in the New Bedford facility, he was eager to purchase the Bellevue Nursing Home (Bellevue) then under construction in Newport. Bellevue was held in trust by Coffin for himself and his wife as beneficiaries. Beaulieu requested Bottomley to contact Coffin about the availability of the nursing home, but he cautioned Bottomley that should a sale result, Bottomley would have to look to the seller for his fee. The next day Bottomley contacted Coffin. Coffin expressed a willingness to sell Bellevue and quoted an initial price of $16,000 per bed for the 115-bed facility. Bottomley informed Coffin that should a sale transpire, Coffin would have to pay Bottomley's fee. Although Coffin agreed to pay Bottomley a fair fee for his services, no exact amount was discussed.

On October 24, Bottomley informed Beaulieu of Coffin's interest. That afternoon Bottomley arranged to show the site to Beaulieu and his partners, and he procured the architectural plans for them. Bottomley arranged a meeting between the parties. On October 31, with Bottomley present, preliminary negotiations commenced regarding the purchase and sale of Bellevue. During the meeting Coffin reiterated his assurance that Bottomley would be fairly compensated for his services. In mid-November Coffin told

Bottomley that a sale was likely and referred the latter to his attorney for purposes of negotiating a fair and reasonable fee.

Bottomley met with Coffin's attorney on November 30. Bottomley stated that the customary formula utilized to calculate a fee in such a case was 5 percent on the first million dollars of the purchase price, 4 percent on the second million and proceeding downward in like fashion. He indicated, however, that because Coffin was a friend he would accept a fee of 5 percent on the first million and 2½ percent on the remainder. Based on an ultimate purchase price of $1,725,000 he considered $68,000 to be a fair fee. Coffin's attorney countered with an offer of $35,000. Later at trial Bottomley testified that he believed at the time that the parties would settle on a figure somewhere between these two offers. Subsequent to the November 30 meeting, Coffin instructed his attorney that he would be willing to pay no more than $25,000. When this offer was communicated to Bottomley negotiations came to a halt.

On December 19, Coffin and Beaulieu executed a purchase and sale agreement for a price of $1,667,500. That same day they executed a supplemental agreement providing for mutual indemnification should Bottomley successfully recover a fee from either party. It is undisputed that Bottomley did not have a Rhode Island real estate broker's license until two days before the Bellevue transaction was consummated.

Bottomley commenced suit in Superior Court for a finder's fee against Ronald Coffin as trustee, and Ronald Coffin and Nancy Lou Coffin as beneficiaries. In a jury-waived session, the trial justice dismissed the complaint against Nancy Lou Coffin, but held Ronald Coffin liable in quantum meruit. Accordingly, judgment was entered awarding Bottomley $50,000, plus interest. Coffin has appealed from that judgment and Bottomley has filed a cross-appeal from the order dismissing the complaint against Nancy Lou Coffin.

Coffin raises several issues on appeal. First, he argues that

G.L. 1956 (1976 Reenactment) §5-20.5-21 bars Bottomley's recovery because he lacked the requisite broker's license.[1] Second, he contends that because Bottomley's claim for a fee was not evidenced by a writing, the Statute of Frauds, §9-1-4, is an insurmountable obstacle to Bottomley's successful maintenance of this action.[2] Third, he urges that the trial justice engaged in speculation and conjecture when he determined that $50,000 was a fair fee.

The trial justice found as fact that the Coffin-Beaulieu transaction was primarily the sale of a business and that Bottomley did not act as a real estate broker. Accordingly, he rejected the defenses predicated upon the Statute of Frauds and broker licensing statute. The trial justice's findings of fact are entitled to great weight and will only be disturbed by this court on appeal if a party can demonstrate that such findings are clearly wrong or that the trial justice misconceived or overlooked material evidence. *See State* v. *A. Capuno Bros.*, 120 R.I. 58, 63, 384 A.2d 610, 613 (1978); *Flynn* v. *Burkhardt*, 118 R.I. 69, 73, 371 A.2d 1057, 1059 (1977); *Raheb* v. *Lemenski*, 115 R.I. 576, 579, 350 A.2d 397, 399 (1976). Coffin has failed to make such a showing in this case.

---

[1] General Laws 1956 (1976 Reenactment) §5-20.5-21 provides:

> "Except as otherwise provided no person shall maintain an action in any court of this state for the recovery of a commission, fee, or compensation for any act done, the doing of which is prohibited under this chapter to other than licensed brokers, unless such person was licensed as a broker at the time of the doing of the act."

[2] The relevant portion of G.L. 1956 (1969 Reenactment) §9-1-4 provides:

> "No action shall be brought:
>
> * * *
>
> "*Sixth.* Whereby to charge any person upon any agreement or promise to pay any commission for or upon the sale of any interest in real estate.
>
> "Unless the promise or agreement upon which such action shall be brought, or some note or memorandum thereof, shall be in writing, and signed by the party to be charged therewith, or by some other person by him thereunto lawfully authorized."

In the instant case Bottomley acted as a finder rather than as a broker, and therefore was not required to hold a real estate broker's license. Courts have frequently been called upon to draw a line of demarcation between a finder and a broker. Generally they stated that a finder finds, introduces, and brings the parties to a transaction together. The parties then proceed to negotiate and consummate the deal themselves. The finder does not negotiate any terms of the agreement. A broker does more; he attempts to bring the parties to agreement on his principal's terms. Typically, a broker is aligned with the interest of one party and against the interest of the other. *See, e.g., Bittner* v. *American-Marietta Co.*, 162 F. Supp. 486, 488 (E.D. Ill. 1958); *Lyons* v. *Stevenson*, 65 Cal. Ap. 3d 595, 605, 135 Cal. Rptr. 457, 463-64 (1977); *Modern Tackle Co.* v. *Bradley Industries, Inc.*, 11 Ill. App. 3d 502, 507, 297 N.E.2d 688, 692 (1973); *Baldwin* v. *Grymes*, 232 Md. 470, 474, 194 A.2d 285, 287 (1963); *Ames* v. *Ideal Cement Co.*, 137 Misc. 2d 883, 886, 235 N.Y.S.2d 622, 625 (Sup. Ct. 1962). In this case Bottomley did little more than bring together a prospective buyer and seller. He set the wheels in motion but did not negotiate for favorable terms on behalf of either party. We also find it significant that Bottomley's primary function was to obtain a prospective *seller* for Beaulieu. A broker, on the other hand, typically procures a *purchaser*. We note, for example, that §5-20.5-1(c) defines a real estate broker as including a person, "who directs or assists in the procuring of a *purchaser* or prospect calculated or intended to result in a real estate transaction ＊ ＊ ＊." (Emphasis added.) Finally, we are not unmindful that §5-20.5-17 imposes criminal sanctions upon any person who acts as a real estate broker while unlicensed. Because this statute is penal in nature, its language must be strictly construed. *See State* v. *Nadeau*, 81 R.I. 505, 512, 105 A.2d 194, 198 (1954). In this context we find no error in the trial justice's finding that Bottomley was not functioning as a real estate broker in connection with the Bellevue transaction.

We likewise find no merit in Coffin's contention that the

Statute of Frauds precludes this suit. The trial justice's finding that the transaction was essentially the sale of a business is amply supported by the evidence adduced at trial. The purchase price was negotiated by the parties on a per-bed basis. One of the conditions to the sale was that Coffin obtain all licensing necessary to the operation of a nursing home prior to the closing. Additionally, in the purchase and sale agreement only $60,000 of the total purchase price was allocated to the real estate.

Coffin's final argument is that the trial justice committed error by awarding Bottomley $50,000 as a fair and reasonable fee because this figure was allegedly arrived at through mere speculation. We have stated that an award of damages must rest on legally competent evidence and may not be the result of conjecture or speculation. *See, e.g., Altiero v. Biltmore Construction Corp.,* 119 R.I. 307, 314, 377 A.2d 237, 240-41 (1977); *Fusaro v. Naccarato,* 103 R.I. 324, 325, 237 A.2d 545, 546 (1968). In this case, which proceeded on a quantum meruit rather express contract basis, the trial justice found that Coffin agreed to pay Bottomley a fair fee. There was further testimony regarding Bottomley's offer, Coffin's counteroffer, and Bottomley's impression that they would agree upon a midway figure. This evidence sufficiently supported the trial justice's determination of a fair fee.

In his cross-appeal Bottomley contends that the trial justice was in error when he dismissed the complaint against Nancy Lou Coffin. The general view appears to be that trustees are personally liable on the contracts they make during trust administration with third parties unless they expressly exclude such liability. The trustee is not an agent of the beneficiaries, and therefore they cannot be bound under a theory that the trustee acted for them. *See* Robert, *Handbook of the Law of Trusts,* §125, at 455 (5th ed. 1973). Bottomley has failed to point out any evidence in the record tending to show to Nancy Lou Coffin agreed to compensate Bottomley for his services. Furthermore, our perusal of the record fails to uncover any such evidence. Accordingly, Bottomley's con-

tention that the trial justice erred when he dismissed the complaint against Nancy Lou Coffin lacks merit.

The defendant's appeal is denied and dismissed, the plaintiff's cross-appeal is denied and dismissed, the judgment below is affirmed, and the case is remanded to the Superior Court for further proceedings.

*Adler, Pollock & Sheehan Inc., Peter Lawson Kennedy,* for plaintiff.

*Manning, West, Santaniello & Pari, V. James Santaniello,* for defendants.