**Ira H. SHINBERG, Plaintiff, Appellant,**

v.

**Paul BRUK, Defendant, Appellee.**

**No. 88–2002.**

United States Court of Appeals, First Circuit.

Heard March 1, 1989.

Decided May 26, 1989.

Ira H. Shinberg, pro se.

Patrick J. Sharkey with whom Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., Boston, Mass., was on brief, for defendant, appellee.

Before CAMPBELL, Chief Judge, BOWNES, Circuit Judge, and FUSTE,[*] District Judge.

BOWNES, Circuit Judge.

Plaintiff-appellant, Ira H. Shinberg, appeals from a summary judgment for defendant-appellee Paul Bruk. At issue is whether Shinberg is entitled to a trial on his claim that he is owed a finder's fee by Bruk. This involves questions of law relative to real estate brokers in New Hampshire and Massachusetts.

## I. FACTS

Although there is little dispute as to the facts, we are mindful of our duty to review the record in the light most favorable to the party opposing the motion for summary judgment. *Knight v. Mills*, 836 F.2d 659, 664 (1st Cir.1987); *Ismert & Associates v. New England Mut. Life Ins.*, 801 F.2d 536, 537 (1st Cir.1986). Shinberg is an attorney licensed to practice in both New Hampshire and Massachusetts. He is a resident of New Hampshire. Shinberg was not, at any relevant time, licensed as a real estate broker in either New Hampshire or Massachusetts.

In December of 1984, Shinberg and Bruk met in Massachusetts at Bruk's request. At the meeting, Bruk orally agreed that he would pay Shinberg a finder's fee of 10 percent of the purchase price of real estate that Shinberg found in New Hampshire suitable for a shopping mall development. Shinberg located a potential site in Plaistow, New Hampshire. He notified Bruk from New Hampshire of his find. Shinberg then met with the landowner, Milton Smith, in New Hampshire. Subsequent to this meeting, Shinberg introduced Bruk to Smith at Smith's office in New Hampshire. Shinberg did nothing further. After negotiations between Smith and Bruk, the land was purchased by Bruk for $2,615,000. Shinberg's demand for a finder's fee in the amount of $250,000 was rejected by Bruk.

## II. PROCEDURAL HISTORY

Shinberg brought suit in the federal district court of Massachusetts. In addition to alleging that he was entitled to a finder's fee under the alleged oral contract (First Count), Shinberg also claimed a violation of Mass.Gen.L. ch. 93A, §§ 2 and 11 (1984) (Second Count). Bruk moved for summary judgment asserting that even if there had been an oral agreement for a finder's fee, it was unenforceable under Mass.Gen.L. ch. 112, § 87RR (1983). Shinberg responded to Bruk's motion for summary judgment and asserted that New Hampshire law should apply. The district court granted the motion for summary judgment. It did not directly address the choice of law question, finding that there

---

[*] Of the District of Puerto Rico, sitting by designation.

could be no recovery under either New Hampshire or Massachusetts law. We affirm.

## III. THE LAW

Both New Hampshire and Massachusetts have enacted legislation mandating the licensing of all real estate brokers, and prohibiting any person from acting as a broker without a broker's license. N.H.Rev.Stat. Ann. ch. 331–A:3 (1984); Mass.Gen.Laws Ann. ch. 112, § 87RR (1983). Shinberg argues that neither statute applies to him because he acted as a finder and not as a broker.

### A. *Choice of Law*

A federal court in an action based on diversity must resolve conflict of law issues by applying the conflict of law rules prevailing in the state in which it sits. *Klaxon Co. v. Stentor Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Computer Systems of America Inc. v. International Business Machines Corp.,* 795 F.2d 1086, 1091 (1st Cir.1986); *Bi–Rite Enterprises, Inc. v. Bruce Miner Co., Inc.,* 757 F.2d 440, 442 (1st Cir.1985). We, therefore, turn to Massachusetts law. The leading Massachusetts choice of law case is *Bushkin Associates, Inc., v. Raytheon Co.,* 393 Mass. 622, 473 N.E.2d 662 (1985). *See Computer Systems of America, Inc.,* 795 F.2d at 1091; *Bi–Rite Enterprises, Inc.,* 757 F.2d at 443. *Bushkin* dealt with issues certified to the Massachusetts Supreme Judicial Court by this Court. The choice of law issue was whether New York or Massachusetts law should determine the validity of an oral contract. 473 N.E.2d at 666. The court first stated that it "would not permit the choice of law question to turn on where the contract was made." *Id.,* 473 N.E.2d at 668. It decided "not to tie Massachusetts conflicts law to any specific choice-of-law doctrine, but seek

instead a functional choice-of-law approach that responds to the interests of the parties, the States involved, and the interstate system as a whole." *Id.* It determined "the choice-of-law question by assessing numerous choice-influencing considerations." *Id.* These included ones set forth in the Restatement (Second) of Conflict of Laws (1971). The court quoted from § 188(2) and § 6(2). *Id.,* 473 N.E.2d at 669. It observed: "No simple and objective task can provide an acceptable choice-of-law answer in this case, nor should it." *Id.,* 473 N.E.2d at 670. This remark is pertinent to the case before us. The court emphasized the choice-influencing factors in § 6(2) of the Restatement. It also paid homage to the five considerations set forth in R.A. Leflar, *American Conflicts Law* § 99 at 194–195 (3d ed. 1977). The court concluded that Massachusetts law should determine the validity of the alleged oral agreement at issue. *Id.,* 473 N.E.2d at 671.

We have followed the path blazed by *Bushkin* and after balancing the factors set forth in the Restatement at § 188(2), in light of the principles enunciated in § 6(2) and bearing in mind Leflar's five considerations, we conclude that New Hampshire law probably applies. Since this is a judgment call, we think it advisable to examine Massachusetts law as well as that of New Hampshire.

### B. *Massachusetts Law*

■ The definition of broker under Massachusetts law would seem to encompass Shinberg's activity as a finder. A real estate broker is defined, *inter alia,* as one who "assists or directs in the procuring of prospects or the negotiation or completion of any agreement or transaction which results or is intended to result in the sale, exchange, purchase, leasing or renting of any real estate...." Mass.Gen.Laws Ann. ch. 112, § 87PP.[1] We think that Shinberg's

---

1. The definition in its entirety reads as follows: "Real estate broker", hereinafter referred to as broker, any person who for another person or a fee, commission or other valuable consideration, or with the intention or in the expectation or upon the promise of receiving or collecting a fee, commission or other valuable consideration, does any of the following:— sells, exchanges, purchases, rents or leases, or negotiates, or offers, attempts or agrees to negotiate the sale, exchange, purchase, rental or leasing of any real estate, or lists or offers, attempts or agrees to list any real estate, or buys or offers to buy, sells or offers to sell or

finding of the land for Bruk would come within the phrase, "procuring of prospects." The law of Massachusetts relative to real estate brokers' commissions has been summarized as follows:

Generally, the mere introduction of a prospect to a property does not earn a broker's commission. *Whitcomb v. Bacon*, 170 Mass. 479, 481, 49 N.E. 742 (1898). *Bradley v. Donahue*, 343 Mass. 774, 774–775, 178 N.E.2d 871 (1961). *See Ebert v. Haskell*, 217 Mass. 209, 210–211, 104 N.E. 556 (1914) (contrasts duty of middleman with broker). The evidence must go far enough to justify a finding that the broker's services were the efficient or effective means of bringing about the actual sale. *Kacavas v. Diamond*, 303 Mass. 88, 92, 20 N.E.2d 936 (1939). But if a broker introduces a seller to a customer who buys, or interests a buyer in a property which he thereafter buys, that may be the efficient or effective means of bringing about a sale if that is all the seller asks the broker to do, *see, e.g., Sherman v. Briggs Realty Co.*, 310 Mass. 408, 412–413, 38 N.E.2d 637 (1941), or if the seller thereafter excludes the broker from subsequent negotiations, *see McEvoy v. Ginsberg*, 345 Mass. 733, 735, 189 N.E.2d 546 (1963), particularly in such fashion as to deceive the broker and to bar him from earning his commission. *See Corleto v. Prudential Ins. Co. of America*, 320 Mass. 612, 616–617, 70 N.E.2d 702 (1947); *Chisholm v. McCarthy*, 325 Mass. 72, 74, 88 N.E.2d 903 (1949). *Turner v. Minasian*, 358 Mass. 425, 429, 265 N.E.2d 371 (1970).

*Bonin v. Chestnut Hill Towers Realty Co.*, 14 Mass.App. 63, 436 N.E.2d 970, 974 (1982), *rev'd on other grounds*, 392 Mass. 58, 466 N.E.2d 90 (1984).

We agree with the district court that since Shinberg was not licensed as a broker as required under Mass.Gen.Laws Ann. ch. 112, § 87RR, he cannot collect a finder's fee from Bruk under the law of Massachusetts.

### C. *New Hampshire Law*

The licensing requirement for real estate brokers in New Hampshire provides:

From and after March 1, 1960, it shall be unlawful for any person to engage in or conduct, directly or indirectly, or to advertise or hold himself out as engaging in or conducting the business, or acting in the capacity, of a real estate broker or real estate salesman within this state without first obtaining a license as such broker or salesman, as provided in this chapter.

N.H.Rev.Stat.Ann. ch. 331–A:3 (1960). This statute has been held by the New Hampshire Supreme Court to mean that it was not only "intended to subject the violator to the penalty which it provides but also to prohibit an unlicensed person to enter into such transactions by making them void and unenforceable." *Coltin v. Manchester Savings Bank*, 105 N.H. 254, 197 A.2d 208, 210 (1964).

The definition of real estate broker is:

II. The term "broker" shall mean any person who for a fee, commission or other valuable consideration, or with the intent or expectation of receiving the same, negotiates or attempts to negotiate the listing, sale, purchase, exchange or lease of any real estate or of the improvements thereon, or collects rents or attempts to collect rents, or advertises or holds himself out as engaged in any of the foregoing activities. The term "broker" also includes any person employed by or on behalf of the owner or owners of real estate to conduct the sale, leasing, or other disposition thereof at a salary or for a fee, commission or any other consideration; it also includes any person who engages in the business of charging an advance fee or contracting for collection of a fee in connection with any con-

---

otherwise deals in options on real estate or advertises or holds himself out as engaged in the business of selling, exchanging, purchasing, renting or leasing real estate, or assists or directs in the procuring of prospects or the negotiation or completion of any agreement

or transaction which results or is intended to result in the sale, exchange, purchase, leasing or renting of any real estate, or negotiates or offers or attempts or agrees to negotiate a loan secured or to be secured by mortgage or other encumbrance upon real estate.

tract whereby he undertakes primarily to promote the sale of real estate through its listing in a publication issued primarily for such purpose or for referral of information concerning such real estate to brokers, or both.

N.H.Rev.Stat.Ann. ch. 331–A:1 (1973). This definition is not as all inclusive as the one contained in the Massachusetts statute. Shinberg's position is simple: he is not a broker within the words or meaning of the statute; therefore the licensing requirement for brokers does not apply to him. Shinberg has a second string to his bow, that under New Hampshire case law he can recover the agreed upon finder's fee whether or not he was a broker.

We consider first the finder/broker question. Broker is defined in Black's Law Dictionary at pages 174–175 (5th ed. 1979):

> **Broker.** An agent employed to make bargains and contracts for a compensation. A dealer in securities issued by others. *White v. Financial Guarantee Corporation*, 13 Cal.App.2d 93, 56 P.2d 550, 553. A middleman or negotiator between parties. A person dealing with another for sale of property. A person whose business it is to bring buyer and seller together. The term extends to almost every branch of business, to realty as well as personalty. One who is engaged for others, on a commission, to negotiate contracts relative to property. *North Carolina Real Estate Licensing Board v. Aikens*, 31 N.C.App. 8, 228 S.E.2d 493, 496. An agent of a buyer or a seller who buys or sells stocks, bonds, commodities, or services, usually on a commission basis.
>
> Ordinarily, the term is applied to one acting for others but is also applicable to one in business of negotiating purchases or sales for himself.
>
> **Real estate broker.** Persons who procure the purchase or sale of land, acting as intermediary between vendor and purchaser, and who negotiate loans on real estate security, manage and lease estates, etc. *Latta v. Kilbourn*, 150 U.S. 524, 14 S.Ct. 201, 37 L.Ed. 1169. A broker employed in negotiating the sale, purchase, or exchange of lands on a com-

mission contingent on success. A person engaged in business to such an extent that it is his vocation or partial vocation.

Finder and Finder's fee are defined as follows:

> **Finder.** With respect to a securities issue, refers to one who brings together an issuer and an underwriter; in connection with mergers, refers to one who brings two companies together. May also refer to one who secures mortgage financing for borrower; or one who locates a particular type of executive or professional for a corporation; or one who locates a particular type of business acquisition for a corporation.
>
> **Finder's fee.** Amount charged for bringing lender and borrower or issuer and underwriter together, or for performing other types of services described under "Finder" supra. A finder's fee for a securities issue may be stock or a combination of cash and stock.

*Id.* at 568–69. Based on the dictionary definitions, it would seem that a finder is a special type of broker that deals in personal property.

The only New Hampshire case which we have been able to find that mentions finder or finder's fee is *Broderick's Case*, 104 N.H. 175, 181 A.2d 647 (1962). That case involved a petition by the Attorney General of New Hampshire praying that disciplinary action be taken against a member of the New Hampshire bar. In outlining the charges against the attorney, the court said: "The petition also states that the defendant procured a friend to receive a 'finder's fee' which he had not earned and executed a contract for his own legal services for the purpose of influencing his brother-in-law in the performance of his official duties...." *Id.*, 181 A.2d at 649. Since the attorney was charged with being part of a scheme to recover money for work billed but not performed during construction of the Boston Common Underground Garage, we know that the finder's fee in that case had nothing to do with the sale and purchase of real estate. This is in accord with the dictionary definition.

Shinberg has cited no New Hampshire cases on this point; he relies upon a Rhode Island case, *Bottomley v. Coffin*, 121 R.I. 399, 399 A.2d 485 (1979) to support his theory that brokers are distinct from finders. *Bottomley* was an appeal from a judgment in a quantum meruit action for a finder's fee in connection with the sale of a nursing home. *Id.*, 399 A.2d at 486. The Supreme Court of Rhode Island upheld the trial court's finding that since the transaction was primarily the sale of a business, the plaintiff did not act as a real estate broker and therefore the defense based on the Statute of Frauds and Rhode Island's broker's licensing statute did not apply. *Id.*, 399 A.2d at 487. This holding would appear to limit a finder to one dealing in personal property. The court then went on to distinguish between a finder and a broker:

> Courts have frequently been called upon to draw a line of demarcation between a finder and a broker. Generally they state that a finder finds, introduces, and brings the parties to a transaction together. The parties then proceed to negotiate and consummate the deal themselves. The finder does not negotiate any terms of the agreement. A broker does more; he attempts to bring the parties to agreement on his principal's terms. Typically, a broker is aligned with the interest of one party and against the interests of the other.

*Id.*, 399 A.2d at 488 (citations omitted). No New Hampshire case is cited in support of this proposition. And for good reason, the common law of New Hampshire is not in accord with it.

In *Benway v. Cole*, 99 N.H. 51, 104 A.2d 734, 736 (1954), the court stated:

> The rule is stated in Mechem, Outlines of the Law of Agency (1952) § 504 as follows: "So where he is not relied upon to bargain for either party but is merely an introducer or middleman, whose function is merely to bring parties together who may then bargain for themselves—as is often the case with the real estate broker —it is frequently held that there is no legal objection to his serving in this double capacity * * *."

There is no requirement under New Hampshire law that a broker engage in negotiations or align himself with the interest of the buyer or seller. "A broker procures a customer if he informs him of the property and leads the customer to the seller. *Williams v. Walker*, 95 N.H. 231, 61 A.2d 522 (1948); *Philbrick v. Chase*, 95 N.H. 82, 58 A.2d 317 (1948)." *Kopka Real Estate, Inc., v. MacLeod*, 119 N.H. 547, 404 A.2d 298, 299 (1979). As long as the broker is the effective cause of the sale, the fact that the owner carried on the negotiations does not deprive the broker of a commission. *DiMarzio v. Read*, 118 N.H. 925, 395 A.2d 1253, 1254 (1978); *Monadnock Ins. Agency v. Manning*, 117 N.H. 508, 374 A.2d 961 (1977). *See also 93 Clearing House, Inc. v. Khoury*, 120 N.H. 346, 415 A.2d 671, 673–74 (1980). Here, Shinberg led the buyer to the seller and was the effective cause of the purchase. It seems evident that under New Hampshire law a finder of real estate would be treated as a real estate broker and the New Hampshire broker licensing statute would bar the claimed finder's fee.

Shinberg relies on the case of *Corkin v. Elger Corp.*, 106 N.H. 522, 214 A.2d 740 (1965), to avoid the statutory bar. The question in *Corkin* was whether a brokerage contract entered into in Massachusetts between Massachusetts residents relative to real estate in New Hampshire was unenforceable in New Hampshire by a broker unlicensed in New Hampshire. *Id.*, 214 A.2d at 741. The court held:

> We think it improbable that the Legislature intended that owners of New Hampshire real estate who choose to forego the services of brokers licensed under RSA ch. 331–A (supp) should enjoy the privilege of sanctuary or asylum in this state, as protection against enforcement of their obligations to nonresident brokers of their choice, for services rendered elsewhere under contracts made outside the state. A broker whose conduct would not subject him to the criminal penalty of a fine as provided by § 8 of the statute, should not in justice be subjected to a civil penalty of forfeiture

of a greater sum because of conduct not shown to have violated the act.

*Id.,* 214 A.2d at 741–42.

■ *Corkin* does not apply to this case for several reasons. First, Shinberg is a resident of New Hampshire and is subject to New Hampshire law. Second, regardless of the finder label, Shinberg acted as a broker in the transaction under New Hampshire law. Third, this made him criminally liable under N.H.Rev.Stat.Ann. ch. 331–A:8 which provides: "Any person acting as a broker or salesman without first obtaining a current license shall be guilty of a violation. Upon conviction of a second or subsequent violation, the person shall be guilty of a misdemeanor." Moreover, as a practicing attorney in both New Hampshire and Massachusetts, Shinberg must be presumed to have been aware of the licensing statutes of both states.

We hold that the agreement between Shinberg and Bruk is unenforceable under both Massachusetts and New Hampshire law.

Affirmed.

Costs awarded to appellee.